## ELIZABETH, A SLAVE, V. THE STATE.

*Quære?* Whether the common law rule with reference to the admission in evidence of confessions elicited by promises or threats, when such confessions are corroborated by facts discovered by means of the confessions themselves, is wholly abrogated in prosecutions against slaves by art. 663 of the Code of Criminal Procedure?

All material facts are admissible in evidence, whatever may have been the source from which emanated the information leading to the discovery.

The accused, who was a slave indicted for the murder of a child, confessed, after the infliction of chastisement, that she knew where the deceased was, and thereupon conducted the witnesses to a pool of water, into which she walked, and thence brought out the body of the deceased. *He d*, that, independent of the confession, the acts of the accused in going to the pool of water and bringing from it the body, were admissible in evidence against her.

Even if her confession, to the effect that she knew where the body of the deceased was, was inadmissible, yet, as it gave no legal significance to her acts, and was allowed to go to the jury without objection, the conviction could not be disturbed on account of its inadmissibility.

But, although the evidence above indicated demonstrated that the accused was cognizant of the murder, yet it did not prove that she committed the homicide, or was an accomplice therein. It was circumstantial evidence tending to prove her guilty of the murder, but was not conclusive enough to exclude any other reasonable hypothesis than her guilt.

Such evidence was as consistent with the assumption that the accused was only an accessory, as that she was guilty of any higher grade of offence; and there being no other evidence implicating her, the verdict of guilty on an indictment charging her as a principal is not sustained by the evidence; and it was error, therefore, to overrule her motion for a new trial.

To support a verdict of guilty upon circumstantial evidence alone, it is essential that no other conclusion than that of guilt be fairly and reasonably deducible from the evidence.

In the absence of proof that the accused and the deceased had been together within a reasonable time before the homicide, and in default of other proof pointing to the accused as the guilty party, the evidence above indicated did not raise the presumption that she was guilty as principal or accomplice, so as to make it incumbent on her to repel it.

APPEAL from Robertson. Tried below before Hon. James C. Walker.

Elizabeth v. The State.

At the Fall Term, 1863, of the District Court of Robertson county, an indictment was returned against Ned and the appellant, both slaves, for the murder of Daniel Threatt, male child of James Threatt. Ned was charged in the indictment with the actual commission of the offence, and the appellant as being present, aiding, abetting, and counseling him therein. The District Attorney having suggested the death of Ned, the indictment abated as to him, and the appellant was placed upon her trial.

From the evidence it appeared that the deceased, who was a child about three years of age, was missed from his home on the evening of the 29th of June, 1863, occasioning great anxiety and distress to his family. Neighbors being sent for, they arrested the two negroes, Ned and Elizabeth, who belonged to Mr. Threatt, who inflicted punishment upon them with a rope, for the purpose of obtaining a disclosure of the fate of the child. Both before and for a time after their punishment, the girl Elizabeth persistently denied any knowledge upon the subject. But upon Ned's stating that Elizabeth had put the child in the well, she tapped one of the witnesses upon the shoulder and said, "he (meaning Ned) tells a lie; I can show you the child." Witness replied that that was what they wanted, and Elizabeth then walked up a ravine which was close to Mr. Threatt's house. Passing one hole of water, she said, "it is not in here," and walked on to another one close by, which was larger and deeper than the first, and there said, "it is in here;" and thereupon she walked into the water and brought out the child. She walked straight to the spot in the water where she picked the child up. The child was greatly bruised, and had a hurt on the neck and side of the head, from which the witnesses present thought it might have been killed before having been thrown into the water; but its limbs were stretched out as though it had struggled after being thrown in. The boy Ned had belonged to Mr. Threatt only some two or three weeks; the girl Elizabeth for two or three years.

There was no other evidence against the appellant.

The jury having returned a verdict of guilty, the defendant's counsel (appointed by the court,) moved for a new trial. The motion was overruled, and an appeal taken.

Elizabeth v. The State.

*Hancock*, for the appellant.

*Attorney-General*, for the appellee.

MOORE, J.—It is a well settled rule of common law that " confessions forced from the mind by the flattery of hope, or by the torture of fear" cannot be legitimately used as evidence of guilt. It seems equally clear, however, by the common law rule, although the confession obtained by means of promises or threats, cannot be received. yet if, in consequence of the confession, certain facts tending to establish the guilt of the prisoner are made known, evidence of these facts may be received.    (1 Greenl. Ev., sec. 231; Ros. Cr. Ev., 51; 2 Russ. Cr., 861; Comm. v. Knapp, 9 Pick, 496; Hudson v. The State, 9 Yerg., 408; The State v. Buck, 2 Harring., 530.)   "The reason of the rule," as is said in The State v. Motley and Blacklye, 7 Rich., 327, " is obvious— confessions induced by hope, or extorted by fear, are delusory; they may be, and often are, false, but when the fact discovered shows so much of the statement true, the reason for the exclusion ceases."   The rule, however, prescribed upon this subject by the Code of Criminal Procedure, at least with reference to confessions obtained from slaves under circumstances such as attended this case, is positive and without qualification, and it may therefore be a matter of some question whether the common law exception to the rule is not thereby abrogated. (Code Crim. Pro., art. 663.) The common law seems to place the exclusion of confessions obtained by fear or threats solely upon the ground of the delusive and un-reliable nature of such evidence, without reference to the fact that the prisoner may thereby have been forced to criminate himself. (See authorities cited *supra*.)   And if this is the ground for their exclusion by the Code, it is not seen why the like exception should not obtain under it as at common law.   But without at present expressing an authoritative opinion on the point, we may say that all material facts are admissible in evidence, whatever may have been the source from which the information leading to their discovery may have been obtained.   Therefore, the act of the prisoner going to the pool of water and bringing from it the

corpse of the child, was of itself legitimately a matter of evidence. And, if the declarations of the prisoner, proffering to show it, might have been properly excluded, yet, as they gave no legal significance to the acts themselves, and having gone to the jury without objection, we cannot say that the verdict was, on this account, improperly obtained.

But we are of the opinion that the evidence does not sustain the verdict. That the prisoner knew where the body of the child was hid, unquestionably demonstrates the fact that she was cognizant of its murder. It does not prove though that she killed it, or was an accomplice in its being done. It is only circumstantial evidence, tending to prove her guilty of murder. Such a conclusion may be deduced from the evidence, but it does not reasonably exclude any other hypothesis. It is as consistent with the testimony to say that she is only an accessory, as that she is guilty of any higher grade of offence. Aside from her knowledge of the concealment of the corpse, there is nothing proved tending to cast suspicion upon her. She is not shown to have had any connection with the child, or any malice towards it, or any motive for its murder; that she was about the premises at the time when it must have come to its death, or that other members of the family did not have equal or better opportunities for committing the crime. In short, none of the attendant circumstances surrounding the case, and which would throw light upon it, are developed. In the first instance, suspicion seems to have pointed to another negro as well as the prisoner, and they were jointly indicted for the crime. But why he was indicted, or why suspicion was directed to either of them, is altogether unexplained. If there was any just ground for charging the negro man with the murder, the fact that the prisoner knew where the body was concealed may be as consistent with this hypothesis, and that she was merely an accessory, as with that of her being a principal in the crime. To support a verdict upon circumstantial testimony alone, no other conclusion than that of guilt must fairly and reasonably grow out of the evidence. If the facts tend with no more force to establish guilt than to the contrary conclusion, the prisoner is entitled to the benefit of the doubt. It may be said that the presumption of

murder may be inferred from the evidence, and that it is incumbent upon her to repel it, if she is not guilty. This would be true if she and the child had been shown to have been together within a reasonable time previous to its death, or there were any other facts pointing to her as the guilty party. But we can hardly think such weight should be given to this suggestion, when the evidence adduced against her is equally consistent with a different conclusion.

Under all the circumstances of the case, as presented to the jury, we are of opinion that the evidence was not sufficient to sustain the verdict, and that a new trial should have been granted.

The judgment is therefore reversed and the case remanded.

Reversed and remanded.