**Douglas Alan GEESA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 290–90.**

Court of Criminal Appeals of Texas,
En Banc.

Nov. 6, 1991.

Allan K. Butcher, Fort Worth, for appellant.

Tim Curry, Dist. Atty. and C. Chris Marshall, Loretta Stauffer, Fred Rabalais, Kimberly Kaufman, Asst. Dist. Attys., Fort Worth, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

MALONEY, Judge.

Appellant was convicted by a jury on an indictment charging the offense of Unauthorized Use of a Motor Vehicle, V.T.C.A. Penal Code, § 31.07. The indictment contained enhancement paragraphs charging two prior felony convictions; punishment was assessed by the jury at 40 years' confinement in the Texas Department of Criminal Justice, Institutional Division. On appeal, in an unpublished opinion, the Court of Appeals reversed the conviction on the basis of insufficient evidence and remanded the case to the trial court to enter a judgment of acquittal. *Geesa v. State*, No. 2–88–140–CR (delivered February 21, 1990).

This Court granted the State's petition for discretionary review to determine (1) whether this Court should reject the "reasonable-hypothesis-of-innocence analytical construct" utilized in review of circumstantial evidence cases; and (2) whether the Court of Appeals erred in finding the evidence insufficient in this case.

We find (1) that the analytical construct is not valid in light of this Court's earlier decision to abrogate the circumstantial evidence charge, see *Hankins v. State*, 646 S.W.2d 191 (Tex.Cr.App.1983) (opinion on rehearing); and (2) that a definitional instruction on "reasonable doubt" is required in light of our decision to abandon the analytical construct.

The State argues that the use of the "reasonable hypothesis analytical construct" conflicts directly with the command of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); that it distorts the meaning of "proof beyond a reasonable doubt"; and that it continues to imply that circumstantial and direct evidence are inherently different.

The appellant argues that the conscious choice of this Court to use the "reasonable hypothesis analytical construct" is a reasonable method of achieving the realization of *Jackson*, and is consistent with both the rule of *Jackson* and the manner in which Texas has decided the issue of sufficiency of the evidence in circumstantial evidence cases for the last 125 years.

In determining that we should bring to an end the requirement that in circumstantial evidence cases, appellate courts must utilize the "reasonable hypothesis analytical construct", we revisit its history and source.[1]

---

1. For a more thorough review of the Texas history of the law on circumstantial evidence and its treatment both as a standard of appellate review and as a cautionary jury instruction, see Judge Onion's dissenting opinion in *Hankins v. State*, 646 S.W.2d 191, 203 (Tex.Cr.App.1983).

## I. *History of the "Analytical Construct"*

◼ At least as early as *Elizabeth v. State*, 27 Tex. 329 (1863), juries in Texas courts have been instructed on the law of circumstantial evidence.[2] However, that instruction was repudiated in *Hankins v. State*, 646 S.W.2d 191 (Tex.Cr.App.1983) (opinion on rehearing). It was explained in *Hankins* that discontinuance was justified by the reasoning and holding of *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), a tax evasion case involving the net worth method of proof. *Hankins*, 646 S.W.2d at 197. In *Holland*, the Supreme Court held that where the trial court charged the jury on the elements of the offense, the presumption of innocence, the Government's burden of proof beyond a reasonable doubt (which included a full definition of reasonable doubt), the length and nature of the net worth method of proof and the character of circumstantial evidence in general, it was not necessary for the trial court to add to the charge that "because the proof was circumstantial, the Government must exclude every other reasonable hypothesis than the guilt of the defendant."

The *Hankins* Court, citing authorities showing that some twenty-one states and most of the federal circuits had abolished use of the circumstantial evidence charge since the *Holland* decision, went on to state:

> Our holding today finds further support in the fact that there is but one standard of proof for criminal convictions and

where the jury is properly instructed on that standard, a charge on circumstantial evidence is valueless and invites confusion. [citations omitted]. The constitutionally required burden of proof of criminal cases "is that the State establish all elements of the offense beyond a reasonable doubt." *Crocker v. State*, 573 S.W.2d 190 (Tex.Cr.App.1978) (Opinion on Rehearing). See *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).... Rather than aiding jurors in applying the reasonable doubt standard, an additional charge on circumstantial evidence focusing on the "reasonable hypothesis" theory serves only to distract jurors from examining the proper standard of proof as the primary focus of their deliberations.

*Hankins*, 646 S.W.2d at 199.

In 1979, twenty-five years after *Holland* but four years before *Hankins*, the Supreme Court decided *Jackson v. Virginia, supra,* and enunciated a single standard of review for testing the sufficiency of the evidence:

> The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.... The relevant question is whether after viewing the evidence in the light most favorable to the prosecution,

**2.** The typical circumstantial evidence charge in Texas read as follows:

> This is a case depending for conviction on circumstantial evidence. In order to warrant a conviction of a crime on circumstantial evidence, each fact necessary to the conclusion sought to be established must be proved by competent evidence beyond a reasonable doubt; all the facts (that is, the facts necessary to the conclusion) must be consistent with each other and with the main fact sought to be proved, and the circumstances, taken together, must be of a conclusive nature, leading on the whole to a satisfactory conclusion and producing, in effect, a reasonable and moral certainty that the accused, and no other person, committed the offense charged.

But in such cases it is not sufficient that the circumstances coincide with, account for and therefore render probable, the guilt of the defendant. *They must exclude, to a moral certainty, every other reasonable hypothesis except the defendant's guilt, and unless they do so, beyond a reasonable doubt, you will find the defendant not guilty.*
See, e.g., *Hunter v. State*, 142 Tex.Crim. 224, 152 S.W.2d 365 (1941); *Harroll v. State*, 135 Tex. Crim. 65, 117 S.W.2d 103 (1938); *Kunde v. State*, 22 Tex.App. 65, 3 S.W. 325 (1886); *Rogue v. State*, 12 Tex.App. 283 (1882); *Hampton v. State*, 1 Tex.App. 652 (1877); *Perkins v. State*, 32 Tex. 110 (1869).

any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson,* 443 U.S. at 318, 99 S.Ct. at 2789.

After *Jackson,* but again before *Hankins,* in *Griffin v. State,* 614 S.W.2d 155 (Tex.Cr.App.1981), this Court recognized *Jackson* to be binding on the states as a minimum standard. Speaking for a panel of this Court, Judge Roberts stated:

> Although *Jackson* was setting a standard for review of State convictions by federal courts, the due process requirements that it announced were based expressly on the Fourteenth Amendment. They are binding on the States and constitute a minimum standard for our sustaining a conviction.

*Griffin,* 614 S.W.2d at 159. And in footnote 5:

> Of course States are free to set higher standards of review. For example, this Court requires that juries be instructed not to convict on circumstantial evidence unless it excludes every reasonable hypothesis other than guilt although the federal constitution does not require a different treatment of circumstantial evidence. See *Richardson v. State,* 600 S.W.2d 818, 826 (Tex.Cr.App.1980) (Dally, J., dissenting, citing *Holland v. United States*). This different treatment extends to appellate review as well.

*Id.* at 159.

And in *Girard v. State,* 631 S.W.2d 162 (Tex.Cr.App.1982), quoting language from *Jackson,* we stated:

> Our task is not to ask whether we believe that the evidence at trial established guilt beyond a reasonable doubt;

it is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Griffin v. State,* 614 S.W.2d 155, 159 (Tex.Cr. App.1981). In circumstantial evidence cases, this test is translated into the requirement that the evidence exclude every reasonable hypothesis other than guilt.

*See also Allen v. State,* 651 S.W.2d 267, 269 (Tex.Cr.App.1983) (finding circumstantial evidence in the case sufficient under *Girard* and *Jackson*).[3]

*Griffin, Girard* and *Allen* were decided before the abrogation of the circumstantial evidence charge by the *Hankins* decision and were predicated upon the fact that, in a circumstantial evidence case, the jury was instructed that they must find that the evidence negated every reasonable hypothesis other than that hypothesis establishing the guilt of the defendant before they could convict. *See* footnote 1, *supra.* The jury instruction on circumstantial evidence served as the standard by which they, as factfinder, were to judge the evidence. A reviewing court, in applying *Jackson v. Virginia* and viewing the evidence in the light most favorable to the jury's verdict, needed only to determine if the jury acted rationally in finding the evidence sufficient in accordance with the instruction it was given. Once the jury instruction on circumstantial evidence was repudiated in *Hankins,* however, its function as a guide to juries in reaching their verdict was discontinued.[4]

---

3. Thus, in Texas at least, the "reasonable hypothesis analytical construct" was envisioned as an effective means of implementing the *Jackson* standard of review in circumstantial evidence cases. This departure from our federal counterparts was well within the state's prerogative, of course, as *Jackson* only propounded a minimum standard of review and *Holland* was not constitutionally binding on the states. For a listing of the states which, at the time of the *Hankins* decision, had chosen to follow *Holland* in abolishing the requirement of a charge on circumstantial evidence "where the jury is properly instructed on the reasonable doubt standard," see *Hankins,* 646 S.W.2d at 197.

4. The *Hankins* decision was not without criticism. Judge Onion, in his dissenting opinion, stated that the majority based its renouncement of the circumstantial evidence charge on the fact that "the giving of the long approved circumstantial evidence charge is now somehow inherently confusing even when considered with a non-definitional charge on reasonable doubt". *Hankins,* 646 S.W.2d at 204. Without agreeing with the majority's conclusion, he pointed out that the presumption underlying the *Holland* doctrine is that an adequate instruction on the standard for reasonable doubt fulfills the function of the cautionary instruction on the law of circumstantial evidence and possibly re-

Shortly after *Hankins* was decided, this Court handed down *Carlsen v. State*, 654 S.W.2d 444; *Freeman v. State*, 654 S.W.2d 450; *Denby v. State*, 654 S.W.2d 457 and *Wilson v. State*, 654 S.W.2d 465 (Tex.Cr. App.1983) (opinions on State's Motions for Rehearing). These four cases, in identical opinions, held that even though it was no longer necessary to instruct juries on circumstantial evidence, the appellate court must still find that every other reasonable hypothesis raised by the evidence was negated, save and except that establishing the guilt of the defendant, if the conviction was to be affirmed in a circumstantial evidence case. The Court, therefore dispensed with the jury charge on circumstantial evidence on the one hand, and kept the "reasonable hypothesis analytical construct" for appellate review on the other. The opinions explained as follows:

> It follows that circumstantial evidence should not be tested by an *ultimate* "standard for review" different from direct evidence; the standard in both kinds of cases is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Accord *Griffin v. State*, 614 S.W.2d 155 (Tex.Cr.App.1981).
>
> Still, we are unable to devise or discover any reason, compelling or otherwise, for abandoning the utilitarian "exclusion of outstanding reasonable hypotheses" analysis for *applying* the above "standard for review" in circumstantial evidence cases.... [I]f the evidence supports an inference other than the guilt of the [defendant], a finding of guilt beyond a reasonable doubt is not a

rational finding.... and this is true irrespective of the character of the evidence.

> [W]e are convinced there are no better analytical guidelines for assaying whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt in any given conviction had upon circumstantial evidence than those we currently employ.

*Carlsen*, 654 S.W.2d at 449–450; *Freeman*, 654 S.W.2d at 456; *Denby*, 654 S.W.2d at 464; *Wilson*, 654 S.W.2d at 471–472 (opinions on rehearing) (emphasis in original).

A majority of this court consistently approved the use of the *Carlsen* method of reviewing evidentiary sufficiency in circumstantial evidence cases following the *Hankins* decision, and recently reiterated in *Butler v. State:*

> It is apparent then, that circumstantial evidence cases have no different standard of review than those cases supported by direct evidence.
>
> [Footnote 1:] We recognize that the United States Supreme Court declined, in *Jackson*, to adopt [the "reasonable hypothesis"] theory as part of the *Jackson* standard for review. Likewise, we do not mean to imply an adoption of this theory as the standard of review for sufficiency of the evidence. The reasonable hypothesis theory as utilized by this Court is merely an analytical construct to facilitate the application of the *Jackson* standard.

769 S.W.2d 234, 238 (Tex.Cr.App.1989) (quoting from *Carlsen*).

Thus, the state of the law reached somewhat of an analytical quandary at this point since the collective holding of this

---

sults in less jury confusion in evaluating direct and circumstantial evidence. *Id.* at 210.

Judge Miller, concurring in the abolition of the circumstantial evidence charge but dissenting because the Court did not also require a full definitional charge on reasonable doubt, stated:

> I do not agree with the majority's implied assumption that a jury is not confused by the naked and undefined term "reasonable doubt." In other words, the majority does not go far enough to clear up the confusion of which they complain.

*Hankins*, 646 S.W.2d at 201. Likewise, Judge Marvin O. Teague, in his prophetic dissent in *Hankins*, stated:

> Today's opinion will cause confusion to exist in the appellate courts of this State as the majority has left open the question of what standard of review this Court will apply in future circumstantial evidence cases ... [I]f this court continues to apply the former standard of review, when a jury in a particular case was not instructed to apply that standard, I foresee a sharp increase of needless reversals by the appellate courts of this State.

*Hankins*, 646 S.W.2d at 220.

Court was that circumstantial and direct evidence were to have the same standard of review and juries were not to be specially instructed in circumstantial evidence cases, yet appellate courts were to continue using the special aid of the "analytical construct" in the review of circumstantial evidence cases. The classification of the "reasonable hypothesis" legal formula as an "analytical construct" rather than a "higher standard of review" was an attempt at theoretical reconciliation, even though the Court's earlier decision in *Griffin v. State*, 614 S.W.2d 155, construed the "reasonable hypothesis" formula to be a higher standard of review than that required by *Jackson v. Virginia*. Regardless of its label, the fact remains that the abrogation in *Hankins* of a charge on circumstantial evidence did away with the very basis and authorization for the use of the "reasonable hypothesis" construct in reviewing sufficiency of the evidence in circumstantial evidence cases.[5]

It is this dichotomy in the law which necessitates our abrogation of the "reasonable hypothesis analytical construct." As we have emphasized on numerous occasions, the sufficiency of the evidence must be measured against the jury charge. *See, e.g., Jones v. State*, 815 S.W.2d 667 (Tex. Cr.App.1991) (citing *Garrett v. State*, 749 S.W.2d 784 (Tex.Cr.App.1986) (opinion on rehearing)). Given the fact that a jury is to be guided by the charge in reaching their verdict, and given the fact that juries are no longer instructed on the law of circumstantial evidence, it no longer makes sense for appellate courts to use the circumstantial evidence "construct" to review the jury's verdict and to determine, thereby, whether the jurors acted "rationally". To do so evaluates the jurors' rationality by a different standard than that by which they were instructed to reach their verdict.

Further, focusing on the existence of an "outstanding reasonable hypothesis inconsistent with the guilt of the accused", at least where the hypothesis of innocence stems from inconsistencies in the evidence presented at trial, effectively repudiates the jury's prerogative to weigh the evidence, to judge the credibility of the witnesses, and to choose between conflicting theories of the case. When understood from this perspective, the construct effectively places the reviewing court in the posture of a "thirteenth juror".[6]

---

5. The dissent challenges this rationale on the basis that "in this jurisdiction a standard of appellate review for evidentiary sufficiency in a circumstantial evidence case *preceded* any requirement that a jury be thus charged," dissenting opinion at p. 173, n. 13 (emphasis in original), and cites to excerpted language from the Texas decision of *Henderson v. State*, 14 Tex. 503 (1855), quoting language from the case of *Commonwealth v. Webster*, 59 Mass. (5 Cushing) 295, 52 American Decisions 711 (1850), generally considered to be the source of the cautionary jury instruction on the law of circumstantial evidence. *See generally, Hankins v. State*, 646 S.W.2d 191, 205 (Tex.Cr.App.1981) (J. Onion's dissenting opinion).

We must point out, however, that the *Webster* case is not a reported legal opinion reviewing the verdict in that case, but is in fact a verbatim report of the actual charge given to the jury in that case by Chief Justice Shaw. As Judge Onion explained in his dissenting opinion in *Hankins*, 646 S.W.2d at 205, "[i]n *Henderson* the court quoted with approval the test from *Webster*, which was and is the basis for the cautionary jury instruction on the law of circumstantial evidence." The *Henderson* case relies on the *Webster* charge in adopting the rule for reviewing the sufficiency of circumstantial evidence. The necessity of the charge itself was not raised

in *Henderson*. *See Henderson*, 14 Tex. at 506 and 520. The fact remains that the jury instruction and the standard of review are logically correlative and can be fairly assessed as interdependent.

6. Indeed, at least one court has misinterpreted the construct as requiring that "[a] conviction will not be sustained on appeal if ... the evidence does not produce *in the mind of the appellate court* a firm conviction or 'moral certainty' of the guilt of the [defendant]." *Jackson v. State*, 672 S.W.2d 801, 803 (Tex.Cr.App.1984) (quoting opinion by court of appeals). In reversing the judgment of the court of appeals, we explained that the *Jackson v. Virginia* standard of review applies to both circumstantial and direct cases and requires the reviewing court to determine whether *"any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt," not whether *the reviewing court* could so find. *Id.* at 803. Although erroneous, the court's reasoning is understandable in light of the tension at play between the jury's prerogative to disbelieve a reasonable hypothesis of innocence raised by circumstantial evidence, and the reviewing court's duty to reverse where that reasonable hypothesis is extant.

Additionally, use of the construct has led to confusion in the courts of appeals. In the years following *Hankins* and *Carlsen,* these courts have grappled with the difficulty of applying the construct and have, on occasion, openly criticized it. See, for example, the majority and dissenting opinions in *Ramirez v. State,* 801 S.W.2d 110 (Tex.App.—San Antonio 1990) (Majority opinion at 115: "We feel constrained to add that we are uncomfortable with the reasonable hypothesis test"; dissenting opinion at 120: "This court cannot become the 'thirteenth juror' and substitute its finding for that of the jury"). *See also Moone v. State,* 802 S.W.2d 101, 104 n. 3 (Tex.App.—Austin 1990) ("an appellate court's application of the 'outstanding reasonable hypothesis' standard is difficult, at best").

A prime example of the difficulty and confusion inherent in the application of the analytical construct is that reviewing courts differ widely on the result to be had in applying the construct to the same or a similar set of facts. See, for example, the following cases where this Court disagreed with the court of appeals as to the sufficiency of the circumstantial evidence when considered in light of the analytical construct: *Goff v. State,* 777 S.W.2d 418 (Tex.Cr.App.1989); *Beardsley v. State,* 738 S.W.2d 681 (Tex.Cr.App.1987) (plurality); *Beier v. State,* 687 S.W.2d 2 (Tex.Cr.App. 1985); *Dickey v. State,* 693 S.W.2d 386 (Tex.Cr.App.1984); *Burns v. State,* 676 S.W.2d 118 (Tex.Cr.App.1984); *Jackson v. State,* 672 S.W.2d 801 (Tex.Cr.App.1984).[7]

Another example of confusion is that appellate courts have differed in their evidentiary analysis as to the light in which the evidence is to be viewed when reviewing the sufficiency of circumstantial evidence.

Some courts have viewed the evidence in the light most favorable to the verdict while others have viewed the evidence in light of the presumption of innocence. *See and cf., Carlsen,* 654 S.W.2d at 447 (opinion on original submission) and *Carlsen,* 654 S.W.2d at 449, n.\* (opinion on State's Motions for Rehearing). Although the correct approach was ultimately deemed by this Court to be the former, *see id.* at 449, there are cases supporting both approaches. *See generally Wilson v. State,* 654 S.W.2d 465, 468–469 (Tex.Cr.App.1983) (J. Onion's concurring opinion on original submission); *Jackson v. State,* 672 S.W.2d 801, 803 (Tex.Cr.App.1984).

Courts have also differed in their interpretation of precisely what evidence is to be considered in reviewing the case for any "outstanding reasonable hypothesis of innocence"—the State's evidence alone, as suggested in the *Carlsen* line of cases, or all of the evidence, as suggested by others? *See and cf., Carlsen,* at 449–450 ("If the *State's* evidence supports an inference other than a finding of the essential elements of the crime"), and *Houston v. State,* 663 S.W.2d 455, 456 (Tex.Cr.App.1984) ("the reviewing court will look at *all* the evidence in the light most favorable to the verdict").[8] Questions of this nature, as well as questions of general application, have somewhat clouded the jurisprudential history of the analytical construct, and no doubt serve as part of the rationale behind criticisms of the construct as a "confusing" analytical tool.

The analytical construct was rejected by the Supreme Court in *Holland,* 348 U.S. 121, 140, 75 S.Ct. 127, 137–38, and again in *Jackson v. Virginia,* 443 U.S. 307, 326, 99 S.Ct. 2781, 2793. It has also been rejected

---

7. This difficulty was highlighted in the cases of *Markham* and *Phelps,* two companion cases involving co-defendants convicted on the basis of circumstantial evidence, where a panel of the Court of Appeals reversed the conviction in one case, holding the evidence insufficient utilizing the analytical construct, while another panel of the Court of Appeals upheld the conviction in the companion case, as constituting sufficient evidence utilizing the analytical construct. *See Markham v. State,* 761 S.W.2d 553 (Tex.App.—San Antonio 1988), and cf. *Phelps v. State,* 730 S.W.2d 198 (Tex.App.—San Antonio 1987) (no. pet.).

8. We note that in *Jackson v. Virginia,* the Supreme Court made clear that a reviewing court is to consider *"all of the evidence"* in assessing its sufficiency to support the verdict. *Jackson v. Virginia,* 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573 ("upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution") (emphasis in original).

as an appellate method of analysis in all federal jurisdictions and many of the State jurisdictions.[9] We today reject its use as a method of appellate review for evidentiary sufficiency in this and other appellate courts of this State. We further overrule *Carlsen v. State,* 654 S.W.2d 444; *Freeman v. State,* 654 S.W.2d 450; *Denby v. State,* 654 S.W.2d 457; *Wilson v. State,* 654 S.W.2d 465; *Butler v. State,* 769 S.W.2d 234, and their progeny to the extent they conflict with this opinion.

## II. *Definitional Instruction on "Reasonable Doubt"*

■ Whether the present Court agrees or disagrees with the *Hankins* decision is not the issue before us. However, in re-examining the two Supreme Court cases which presaged *Hankins*—the *Holland* and *Jackson* decisions—it is evident that both cases implicated the requirement of a full definitional instruction to the jury on reasonable doubt as recognized by Judges Onion, Clinton, and Miller in their individual opinions in the *Hankins* case. *See* n. 4, *supra* at p. 157.[10] As Judge Clinton succinctly put it, "the accused is stripped of the benefit of a charge on circumstantial evidence and then loses the protection of a definition on reasonable doubt." *Hankins,* 646 S.W.2d at 219.

In his dissent in *Hankins,* Judge Miller suggested a charge on reasonable doubt in the terms spoken of in *Holland,* "the kind of doubt that would make a person hesitate to act."[11] *Hankins,* 646 S.W.2d at 201, n.

9. Federal jurisdictions: *U.S. v. Bell,* 678 F.2d 547 (5th Cir.1982); *U.S. v. Lechuga,* 888 F.2d 1472 (5th Cir.1989); *U.S. v. McNatt,* 813 F.2d 499 (1st Cir.1987); *U.S. v. Elsbery,* 602 F.2d 1054 (2nd Cir.1979); *U.S. v. Hamilton,* 457 F.2d 95 (3rd Cir.1972); *U.S. v. Chappell,* 353 F.2d 83 (4th Cir.1965); *U.S. v. Conti,* 339 F.2d 10 (6th Cir.1964); *U.S. v. Wigoda,* 521 F.2d 1221 (7th Cir.1975); *U.S. v. Carlson,* 547 F.2d 1346 (8th Cir.1976); *U.S. v. Nelson,* 419 F.2d 1237 (9th Cir.1969); *U.S. v. Merrick,* 464 F.2d 1087 (10th Cir.1972); *U.S. v. Poole,* 878 F.2d 1389 (11th Cir.1989); *U.S. v. Davis,* 562 F.2d 681 (D.C.Cir. 1977).

State jurisdictions: *Des Jardins v. State,* 551 P.2d 181 (Alaska 1976); *State v. Nash,* 143 Ariz. 392, 694 P.2d 222 (1985); *Ciccaglione v. State,* 474 A.2d 126 (Del.1984); *Ford v. U.S.,* 498 A.2d 1135 (D.C.Ct.App.1985); *Youngblood v. State,* 179 Ga.App. 163, 345 S.E.2d 634 (1986); *People v. Eyler,* 133 Ill.2d 173, 139 Ill.Dec. 756, 549 N.E.2d 268 (1989); *Kidd v. State,* 530 N.E.2d 287 (Ind.1988); *State v. Radeke,* 444 N.W.2d 476 (Iowa 1989); *State v. Morton,* 230 Kan. 525, 638 P.2d 928 (1982); *Hines v. State,* 58 Md.App. 637, 473 A.2d 1335 (1984); *People v. Johnson,* 137 Mich.App. 295, 357 N.W.2d 675 (1984); *Stokes v. State,* 518 So.2d 1224 (Miss.1988); *State v. Buchanan,* 210 Neb. 20, 312 N.W.2d 684 (1981); *State v. Sutphin,* 107 N.M. 126, 753 P.2d 1314 (1988); *State v. Jones,* 303 N.C. 500, 279 S.E.2d 835 (1981); *State v. Jacobson,* 419 N.W.2d 899 (N.D.1988); *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991); *State v. Duran,* 107 N.M. 603, 762 P.2d 890 (1988); *Commonwealth v. Sullivan,* 472 Pa. 129, 371 A.2d 468, 478 (1977); *State v. Caruolo,* 524 A.2d 575 (R.I.1987); *State v. Neale,* 145 Vt. 423, 491 A.2d 1025 (1985); *State v. Couch,* 44 Wash.App. 26, 720 P.2d 1387 (1986); *State v. Poellinger,* 153 Wis.2d 493, 451 N.W.2d 752 (1990).

10. Until today, "reasonable doubt" has never been defined in Texas, either statutorily or in the charge to the jury. *See* V.T.C.A., Penal Code, Section 2.01. After the enactment of Section 2.01 of the Texas Penal Code in 1974, the following "nondefinitional" charge on presumption of innocence and reasonable doubt was given:

All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that he has been arrested, confined or indicted for, or otherwise charged with the offense, gives rise to no inference of guilt at this trial. In case you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him and say by your verdict "not guilty."

*See Carr v. State,* 600 S.W.2d 816 (Tex.Cr.App. 1980).

11. As Judge Miller pointed out in *Hankins,* the definition of "reasonable doubt" is clarified when one compares it with the lesser burdens of proof:

This definition of reasonable doubt ... becomes almost crystal clear when put in perspective with the burdens of proof of "preponderance of the evidence" and of "clear and convincing evidence." ...:

Proof by a *preponderance of the evidence* ... is defined as that degree of proof that, when taken as a whole, shows that a fact sought to be proved is more probable than not.

Proof by *clear and convincing evidence* ... is defined as that degree of proof which will produce in the jury's mind a firm belief as to the truth of the allegation sought to be established. This is an intermediate standard, fall-

3 (J. Miller, concurring in part, and dissenting in part). *See Holland v. U.S.*, 348 U.S. at 140, 75 S.Ct. at 137–38. The following definitional instruction on reasonable doubt combines the provisions of Section 2.01, V.T.C.A., Penal Code, and instructions used in the federal system:

> All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that a person has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial. The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.
>
> The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.
>
> It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all "reasonable doubt" concerning the defendant's guilt.
>
> A "reasonable doubt" is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case. It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs.
>
> Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.
>
> In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him and say by your verdict "Not guilty".

*See, e.g.,* 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions, § 11.14; Pattern Jury Instructions—5th Circuit United States Court of Appeals 1988; P. McClung, *Jury Charges for Criminal Practice,* at p. 6 (1990).

We expressly adopt this instruction on "reasonable doubt" and hold that this instruction shall be submitted to the jury in all criminal cases, even in the absence of an objection or request by the State or the defendant, whether the evidence be circumstantial or direct.[12]

### III. *Application to This Case*

▆ In this case, the jury was neither instructed on the law of circumstantial evidence nor given a full definitional instruction on reasonable doubt. On appeal of the conviction to the Court of Appeals, that court applied the "analytical construct" to the facts of the case in determining the evidence insufficient to support the verdict.

---

ing between the preponderance of the evidence standard and the reasonable doubt standard. [citation omitted].
*Hankins,* 646 S.W.2d at 203, n. 6.

**12.** In framing a definitional instruction on reasonable doubt, we are cognizant of the recent decision of the Supreme Court in *Cage v. Louisiana,* —— U.S. ——, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), where the Court reversed the conviction because the reasonable doubt instruction was contrary to *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), which requires that a conviction must be based on proof beyond a reasonable doubt of every fact necessary to constitute the crime with which the defendant is charged.

In *Cage,* the Supreme Court emphasized that the Louisiana charge equated reasonable doubt with *"grave uncertainty"* and *"actual substantial doubt"* and, emphasizing the words "substantial" and "grave," said that they suggested a higher degree of doubt than is required for acquittal under the reasonable doubt standard. *Cage,* 111 S.Ct. 328. The Supreme Court concluded that it was clear a "reasonable" juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by *Winship. Id.* The definitions we adopt today are not prohibited by the Supreme Court's decision in *Cage.*

Our holding today, abrogating use of the analytical construct, requires that we reverse the Court of Appeals' judgment. Ordinarily, we would remand this cause to that court for reconsideration in light of our holding that circumstantial cases are to be analyzed solely under the standard of *Jackson v. Virginia*. However, because the jury was not instructed in accordance with the second part of our holding today, requiring a full definitional instruction on reasonable doubt, we must remand the cause to the trial court for a new trial.

### IV. *Limited Prospectivity*

■ The Supreme Court, in its recent opinion in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), decided that "the question 'of whether a decision [announcing a new rule should] be given prospective or retroactive effect should be faced at the time of [that] decision.'" *Id.* at 489 U.S. 288, 300, 109 S.Ct. 1060, 1069, 103 L.Ed.2d 334, 349 (quoting Mishkin, Foreword: the High Court, the Great Writ, and the Due Process of Time and Law, 79 Harv.L.Rev. 56, 64 (1965)). We agree with this view and therefore address the issue of how our holding is to be applied—prospectively, retroactively, or some variation thereof.[13]

The Supreme Court, over the past century, has periodically been confronted with claims of retroactivity of new rules pronounced by the Court in its capacity of judicial review. Two types of rules have been the focus of the Court's retroactivity

analyses—rules of constitutional criminal procedure and rules overruling precedent. *See generally* Annot., Supreme Court Decisions—Retroactivity, 22 L.Ed.2d 821 (1969); Annot., Retroactive or Prospective Overruling, 14 L.Ed.2d 992 (1965). The rules in the instant case are procedural rules overruling precedent. The rules are not of constitutional dimension *per se;* rather, the rules serve to implement the constitutional requirement that a criminal conviction cannot stand "except upon proof beyond a reasonable doubt." *See In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Although the rules obviously address the constitutionally required burden of proof in a criminal case, they do not change it. Neither rule increases or diminishes the requirement of *In re Winship* that a conviction cannot stand except upon proof of guilt beyond a reasonable doubt.

■ In *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the Supreme Court fashioned a three-pronged test for determining whether a new rule applies retroactively:

(1) the purpose of the rule;

(2) the reliance placed upon the previous doctrine; and

(3) the effect on the administration of justice of a retrospective application of the new rule.

*Id. See also Stovall v. Denno*, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967). In various circumstances, the Court applied the three-pronged test and denied full retroactivity to a "new rule."[14]

---

**13.** For the purposes of this opinion, the following definitions will apply: (1) *pure prospectivity*—applying the new rule only to those cases tried after the effective date of the opinion announcing the new rule; (2) *limited prospectivity*—applying the new rule to the parties in the case in which the new rule is announced and to those cases tried after the effective date of the opinion announcing the new rule; (3) *limited retrospectivity*—applying the new rule to all cases then pending on direct review or not yet final, as well as those in (2); and (4) *pure retrospectivity*—applying the new rule to cases pending on collateral review as well as those included within (3).

It should be noted that the nomenclature employed to describe the different approaches varies among the courts and authorities. The label

of "retroactive", for example, has sometimes been used to describe an application of a new rule to the parties in the case announcing the rule. *See generally* Annot., Supreme Court Decisions—Retroactivity, 22 L.Ed.2d 821 (1969) (collecting and analyzing United States Supreme Court cases in which the court has expressed its views as to the retroactive effect of its own decisions announcing new rules).

**14.** The Court has "drawn the retroactivity line in a variety of places," as detailed in *Solem v. Stumes*, 465 U.S. 638, 650–651, 104 S.Ct. 1338, 1345–46, 79 L.Ed.2d 579 (1984):

Some decisions have been applied only to defendants whose convictions were not yet final when the new rule was established, *United States v. Johnson*, 457 U.S. 537, 73 L.Ed.2d

This general approach is sometimes referred to as the "doctrine of nonretroactivity". One variation of nonretroactivity is to apply the new rule to the parties in the case in which the rule is pronounced and all future cases, but not those pending on direct review or not yet final at the time of the decision, and not to those seeking collateral review of convictions which were final before the new rule was announced. We refer to this approach as "limited prospectivity." *See* n. 9, *supra*, at p. 161.

Most recently, however, in *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the Court departed from its "doctrine of nonretroactivity" and applied the new rule of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), retrospectively to all cases pending on direct federal and state review or not yet final at the time *Batson* was decided. In *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Supreme Court held that *Batson* does not apply retroactively on collateral review of convictions that became final before the *Batson* opinion was announced. *See also Allen v. Hardy*, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986).

These holdings respecting the retroactivity of the *Batson* rule adopt the twofold approach suggested by Justice Harlan in his dissent in *Desist v. United States*, 394 U.S. 244, 256, 89 S.Ct. 1030, 1037, 22 L.Ed.2d 248, 259 (1969), and represent the current viewpoint of the Supreme Court respecting retroactivity—a new rule will apply to all future cases, the case announcing the rule, and all cases then pending on direct review or not yet final, but not to the collateral review of cases which were final before the new rule was announced. Under this view, habeas petitions should generally be judged according to the law in effect at the time of the conviction; all other cases are decided in accordance with the new rule. We refer to this approach as "limited retroactivity." *See* n. 9, *supra*, at p. 161.

■ That said, however, we must note that the posture of the Supreme Court respecting the retroactivity of judicially-announced rules is neither binding on this Court nor mandated by the federal constitution. As has been frequently recognized by the Supreme Court, "the Constitution neither prohibits nor requires retrospective effect [of a new rule] ... '[T]he federal constitution has no voice upon the subject'." *Linkletter v. Walker*, 381 U.S. 618, 629, 85 S.Ct. 1731, 1737–38, 14 L.Ed.2d 601, 608 (1965).[15] The decision whether to apply a new rule retrospectively "is not a matter of constitutional compulsion, but a matter of judicial policy, to be determined by the court after weighing the merits and demerits of the particular case, by looking to the prior history of the rule in question, its purpose and effect, and whether retroactive application will further or retard its operation."[16] Annotation, *Retroactive or Prospective Overruling*, 14 L.Ed.2d 992 (1965) (paraphrasing *Linkletter*, 381 U.S. at 629, 85 S.Ct. at 1737–38, 14 L.Ed.2d at 608).

■ Applying these basic principles to the new rules at issue compels the conclu-

---

202, 102 S.Ct. 2579 (1982); *Linkletter v. Walker*, 381 U.S. 618, 14 L.Ed.2d 601, 85 S.Ct. 1731 (1965), some only to those defendants whose trials had not yet begun at that point, *Johnson v. New Jersey*, 384 U.S. 719, 16 L.Ed.2d 882, 86 S.Ct. 1772 (1966); *DeStefano v. Woods*, 392 U.S. 631, 20 L.Ed.2d 1308, 88 S.Ct. 2093 (1968), some only to those whose constitutional rights were violated after the law-changing decision was handed down, *United States v. Peltier*, 422 U.S. 531, 45 L.Ed.2d 374, 95 S.Ct. 2313 (1975); *Desist v. United States*, 394 U.S. 244, 22 L.Ed.2d 248, 89 S.Ct. 1030 (1969); *Stovall v. Denno*, 388 U.S. 293, 18 L.Ed.2d 1199, 87 S.Ct. 1967 (1967), and some only to those cases where the prosecution sought to

introduce (newly) illegal evidence after the date of the nonretroactive decision, *Fuller v. Alaska*, 393 U.S. 80, 21 L.Ed.2d 212, 89 S.Ct. 61 (1968).

15. Quoting Justice Cardozo in *Great Northern R. Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360, 366 (1932) (referring to state court's prospective overruling of prior decision).

16. The Supreme Court's subsequent decisions in *Griffith* and *Teague* did not alter or overrule this earlier language in *Linkletter* regarding the fact that retroactivity is not a constitutional issue, but one of judicial policy.

sion that justice is best served by an application of "limited prospectivity," i.e., application of the rules will be limited to the case at bar and all cases tried hereafter. We want to emphasize that we are not adopting this approach for all cases which establish new rules. In general, we agree with the Supreme Court's rationale in *Griffith* where the Court adopted the "limited retrospectivity" approach, to use our nomenclature. *See Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Retroactivity, of course, must be decided on a case-by-case basis.

For the following reasons, we limit our use of the "limited prospectivity" approach to the case at bar. First, the rules at issue in the instant case are distinguishable from those in *Griffith.* The *Griffith* rationale was keyed to the "actual inequity" that results when only one of many similarly situated defendants receives the benefit of a new rule. *Griffith,* 107 S.Ct. at 714 (quoting *United States v. Johnson,* 457 U.S. 537, at 555, n. 16, 102 S.Ct. 2579, at 2590, n. 16, 73 L.Ed.2d 202 (1982)). The rule of this case, however, of adhering to the minimal standard of review enunciated in *Jackson v. Virginia,* was instituted on petition by the State, not at the defendant's request.

The corresponding institution of the new rule requiring that trial courts provide juries in criminal cases with a full definitional instruction on "reasonable doubt" is simply a necessary corollary to the *Jackson* standard of review, given that the sufficiency of the evidence is measured in great part by the court's instructions to the jury and the degree of rationality and reasonableness utilized by the jury in applying those instructions to the evidence. However, the requirement of an instruction on "reasonable doubt" cannot be said to be a greater benefit to the defendant than was the "reasonable hypothesis of innocence analytical construct." Thus, unlike the issue in circumstantial evidence cases presented in *Griffith,* no "actual inequity" results from denying a retrospective application of these new rules.

Secondly, the purpose of the rules in this case—more logically correlate the standard of review for sufficiency claims with the instructions provided in the court's charge to the jury—is best served by a prospective application. The rules, being procedural in nature and not conferring any greater constitutional protections than existed before, are not of the type which typically militate in favor of a retrospective application. The mechanics of implementing the rules militate against a retrospective application because of the reliance placed upon the previous doctrine of analyzing the sufficiency of circumstantial cases under the analytical construct. In the various cases already pending on direct review or not yet final, juries were not instructed with a full definition of reasonable doubt. Thus, the purpose of correlating the standard of review with the court's instructions to the jury cannot be effected retroactively without requiring new trials in each of the affected cases.

Lastly, this type of retrospective application would unduly burden the administration of justice. It makes more sense, in the unique context of this case, to allow defendants in the cases pending on direct review or not yet final to have their cases decided under the analytical construct than to require new trials in every case for failure to charge the jury with a full definitional instruction on reasonable doubt. The latter approach would not further the purpose of the new rules and would unnecessarily hinder the administration of justice.

For these reasons, we adopt the new rules and apply them to the instant case and all cases tried hereafter. Accordingly, the judgment of the Court of Appeals is reversed and the cause is remanded to the trial court for a new trial.

CLINTON, Judge, dissenting.

Manifestly bound and determined to jettison the socalled "analytical construct" for applying in circumstantial evidence cases the ultimate "standard of review" the Court adopted for direct evidence cases, the majority resorts to faulty revisionism in the premises. My purpose in writing sepa-

rately is to set the historical context straight and then examine the status quo, to the end that affected parties may comprehend yet another restructuring of the appropriate standard of review.

## I

### A

Long before *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), this Court established and then routinely applied the "some evidence" rule in gauging sufficiency of evidence to sustain a judgment of conviction. See, e.g., *Banks v. State*, 510 S.W.2d 592, 595 (Tex.Cr.App. 1974) (upon viewing evidence in light most favorable to verdict, it will be sustained "if there is *any* evidence which, if believed, shows the guilt of the accused"). Thereafter, albeit for somewhat different purposes, in *Combs v. State*, 643 S.W.2d 709 (Tex.Cr.App.1982), quoting and relying on *Banks v. State*, supra, the Court reaffirmed that rule, *viz:*

> "Sufficiency of the evidence as determined by this Court is a question of law.... If there is *any evidence* that establishes guilt beyond a reasonable doubt, and if the trier of fact believes that evidence, we are not in a position to reverse the judgment on sufficiency of the evidence grounds."

*Id.*, at 716 (also juxtaposing without distinguishing "federal standard" of *Jackson v. Virginia*, supra, to demonstrate that evidentiary sufficiency "is a *question of law* under both state and federal standards," at 717).

In *Jackson v. Virginia*, supra, because "the Constitution prohibits the criminal conviction of any person except upon proof beyond a reasonable doubt," the Supreme Court decided "what standard is to be applied in a *federal habeas corpus proceeding* when the claim is that a person has been convicted in state court upon insufficient evidence." *Id.*, 443 U.S. at 309, 99 S.Ct. at 2783, 61 L.Ed.2d at 567.[1]

Preliminarily, the Supreme Court recounted that the lower courts had applied the "no evidence" standard of *Thompson v. Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960), to find there was "some evidence" on the issue of intent to kill. Specifically, then, certiorari was granted to consider the claim "that under *In re Winship* [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)] a federal habeas corpus court must consider not whether there is *any* evidence to support a state-court conviction, but whether there was sufficient evidence to justify a rational trier of the facts to find guilt beyond a reasonable doubt." *Id.*, 443 U.S. at 312–313, 99 S.Ct. at 2785, 61 L.Ed.2d at 569. (emphasis in original).

The standard announced for federal habeas courts, with explication, is reproduced in the margin.[2] It was intended to be "the constitutional *minimum* required to en-

---

1. All emphasis is mine here and throughout this opinion unless otherwise indicated.

2. "After *Winship* the critical inquiry on review of sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But the inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial establishes guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus imposes upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law."
*Id.*, 443 U.S. at 318–319, 99 S.Ct. at 2788–2789, 61 L.Ed.2d at 573–574 (emphasis in original; citations and notes omitted). See *Freeman v. Zahradnick*, 429 U.S. 1111, 97 S.Ct. 1150, 51 L.Ed.2d 566 (1977) (Stewart, J., dissenting with proposal viewed by three justices as harbinger of *Jackson v. Virginia*). See separate opinion of Justice Stevens, n. 8, 443 U.S. at 334, 99 S.Ct. at 2797, 61 L.Ed.2d at 583.

force the due process right established in *Winship*[.]" *Id.*, n. 12, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. Yet, the Supreme Court contemplated that "state appellate review undoubtedly will serve in the vast majority of cases to vindicate the due process protections that may be implicated in a state criminal trial." *Id.*, at 322, 99 S.Ct. at 2791, 61 L.Ed.2d at 576.

Accordingly, the Supreme Court found the *Thompson* "no evidence [rule] simply inadequate to protect against misapplication of the constitutional standard of reasonable doubt," *viz:*

> " '[A] mere modicum of evidence may satisfy a "no evidence" standard....' [citation omitted]. Any evidence that is relevant—that has any tendency to make the existence of an element of a crime slightly more probative than it would be without the evidence [citation omitted]— could be deemed a 'mere modicum.' But it could not seriously be argued that such a 'modicum' of evidence could by itself rationally support a conviction beyond a reasonable doubt. The *Thompson* doctrine simply fails to supply a workable or even a predictable standard for determining whether the due process command of *Winship* has been honored. [note omitted]."

*Id.*, 443 U.S. at 320, 99 S.Ct. at 2789–2790, 61 L.Ed.2d at 574.

Thus the "critical inquiry" on review under *Jackson v. Virginia* is to determine whether the *record* evidence could reasonably support a finding of guilt beyond a reasonable doubt, and the "relevant question" for *the reviewing court* is whether, after viewing *all of the evidence* in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*, at 318–319, 99 S.Ct. at 2788–2789, 61 L.Ed.2d at 573–574.[3]

**B**

The Court first directly confronted *Jackson v. Virginia* in *Griffin v. State*, 614 S.W.2d 155 (Tex.Cr.App.1981).[4] Judge Roberts writing for a Court panel acknowledged, "The question of sufficiency of the evidence to sustain a state criminal conviction implicates the Fourteenth Amendment," citing *Jackson v. Virginia*, and quoting the standard it announced, see n. 2, *ante.* He recognized that standard for what it is, *viz:*

> "Although *Jackson* was setting a standard for review of state convictions by federal courts, the due process requirements that it announced were based expressly on the Fourteenth Amendment. They are binding on the states and constitute a *minimum standard* for our sustaining a conviction.[5] 'Under [*In re*] *Winship* ... which established proof beyond a reasonable doubt as an essential of Fourteenth Amendment due process,

---

**3.** That a reviewing court must examine *all record evidence* to determine the relevant question is clearly the understanding of those justices who protested the "new rule," *viz:*

> "... The Court, however, rejects this standard [that the reviewing court ask itself whether it believes the trial evidence established guilt beyond a reasonable doubt], as well as others that might be considered consistent with *Winship*. For example, it does not require the reviewing court to view *just the evidence most favorable to the prosecution* and then to decide whether that evidence convinced it beyond a reasonable doubt, nor whether, based on the entire record, rational triers of facts could be convinced of guilt beyond a reasonable doubt. Instead, and without explanation, it chooses a still narrower standard...."

*Id.*, 443 U.S. at 334, 99 S.Ct. at 2797, 61 L.Ed.2d at 583 (Stevens, J., joined by The Chief Justice and Rehnquist, J., concurring in the judgment).

Unlike those justices, here the majority seems unable to appreciate fully the requisite record basis for reviewing sufficiency of the evidence under *Jackson v. Virginia.* Compare majority opinion at 156, selectively excerpting the "critical inquiry" formulation, but pretermitting that the role of factfinder is preserved "through a legal conclusion that upon judicial review *all of the evidence* is to be considered ... [thereby] imping[ing] *upon 'jury' discretion* only to the extent necessary to guarantee the fundamental protection of due process of law." *Id.*, at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 574 (first emphasis in original).

**4.** Earlier it had merely noticed potential impact of the "new rule" in our jurisdiction. See *Mitchell v. State*, 586 S.W.2d 491, at 496, n. 14 (Tex. Cr.App.1979), and *Dinnery v. State*, 592 S.W.2d 343, at 345, n. 3 (Tex.Cr.App.1979). Otherwise the Court did not address the *Jackson v. Virginia* standard until *Griffin v. State*, supra.

it follows that when a conviction [that was obtained even when no rational trier of fact could have found guilt beyond a reasonable doubt] occurs in a state trial, it cannot constitutionally stand.' [citation omitted] '[S]tate appellate review undoubtedly will serve in the vast majority of cases to vindicate the due process protection that flows from *Winship*....' [citation omitted].

---

5. Of course states are free to set higher standards of review. For example, this court requires that juries be instructed not to convict on circumstantial evidence unless it excludes every reasonable hypothesis other than guilt, although the federal constitution does not require a different treatment of circumstantial evidence. [citation omitted]. *This different treatment extends to appellate review as well. Sewell v. State,* 578 S.W.2d 131, 135 (Tex.Cr. App.1979)."

*Id.,* at 159.

Accordingly, the Court panel applied the *Jackson v. Virginia* standard to the facts surrounding the alleged aggravated robbery in *Griffin,* examined *all the evidence,* that offered by the State as well as defen-

**5.** After distinguishing cases finding evidence insufficient to prove intent to deprive permanently, the Court reasoned:

"There was no such evidence in this case. The *appellant's acts were sufficient evidence* from which a rational trier of fact could have inferred an intent to deprive as that term is defined in V.T.C.A. Penal Code, Section 31.-01(3)(A). This is not to say that issue was uncontested or that the appellant was not entitled to an instruction on it, had he requested one. Rather we hold that *the evidence was such that a rational jury could have found for the State on the issue."*

*Id.,* at 160.

**6.** The offense was aggravated robbery of a jeweler accosted at home by two unmasked men and a third man masked and gloved who purportedly would stay with his minor sons while the two men took him to his store to acquire certain jewelry and ostensibly to call the masked one to release his boys; after reprising the formulation in *Griffin,* supra, Judge Roberts writing for a different Court panel analyzed those facts and other circumstantial evidence accordingly, *viz:*

"The appellant's argument that it was 'improbable' that the robbers could have rendezvoused and exchanged items, so that he could have given away some of the loot [to one Bogard] within 45 minutes, is one for the jury. They apparently rejected it, and *a ra-*

dant's testimony, and on intent to deprive permanently the owner of property concluded that "a rational jury could have found for the State on the issue." *Id.,* at 159–160.[5] *Accord: Girard v. State,* 631 S.W.2d 162, 163–164 (Tex.Cr.App.1982).[6]

The majority emphasizes that when *Griffin* and *Girard* were decided jurors and implicitly judges were guided by a circumstantial evidence charge, but it is content to say merely that the Court "recognized" *Jackson v. Virginia* as a minimum standard of review, opinion at 157. The majority fails to critique or even allude to the analysis the Court panels employed to reconcile that standard with the "reasonable hypothesis" treatment in determining whether "a rational jury could have found for the State[.]" *Griffin,* at 160; *Girard,* at 163, 164. See also *Foster v. State,* 635 S.W.2d 710 (Tex.Cr.App.1982) (en banc opinion on motion for rehearing, at 718 ff).

## C

March 1, 1983, the Court abolished the requirement of a circumstantial evidence

*tional trier of the facts would have been justified in doing so in light of the short distances which apparently had to be traveled.* The same is true of the 'inconsistencies,' which really are suggestions that certain incriminating evidence was *not* found, rather than *evidence which actually was inconsistent with guilt.*

The suggestion that the masked man could have been Bogard or a third person, are not 'reasonable hypotheses other than guilt.' This test of circumstantial evidence does not permit the *alteration of the evidence to fit the hypothesis;* obviously there will always be a hypothesis of innocence if inculpatory evidence such as Bogard's can be rejected. *The correct procedure involves accepting the inculpatory circumstances, such as Bogard's testimony, and then asking if there is a reasonable hypothesis other than guilt which also would account for such circumstances.*

In this case, the fact that the appellant was shown by Bogard's testimony to have been in possession of the loot so soon after the robbery was an inculpatory circumstance. * * * * We hold that this very recent unexplained possession, together with the fact of the similarity of appearance [of the masked man described by the jeweler] and the fact that the appellant was a companion of at least one of the unmasked robbers, was sufficient evidence of guilt. [citation omitted]."

*Id.,* at 163–164.

charge to the jury. *Hankins v. State,* 646 S.W.2d 191 (Tex.Cr.App.1981–1983) (Opinion on State's Motion for Rehearing). It announced a different rule to be followed in this jurisdiction, *viz:*

> "The rule should be that circumstantial evidence alone may suffice only if the inferences arising therefrom prove the facts in question beyond a reasonable doubt. That is, the jury *should consider* the totality of the direct or circumstantial evidence and the reasonable inferences which may be drawn therefrom, in determining whether it was sufficient to establish guilt beyond a reasonable doubt."

*Id.,* at 199 (seemingly suggesting jurors will be given to understand that which they *"should consider"* where "properly instructed on the reasonable doubt standard of proof," *id.,* at 200). Obviously, the *Hankins* majority was strongly influenced by *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954) (in federal cases "better rule" is with proper instruction on standards of reasonable doubt, adding circumstantial evidence instruction "confusing and incorrect"). But the majority did not mention *Jackson v. Virginia,* presumably because it was bent on eradicating the instruction on circumstantial evidence, not treating it on appellate review.[7]

Indeed, on the same day and contemporaneously therewith, the Court handed down opinions reviewing sufficiency against the "reasonable hypothesis" standard, namely: *Carlsen v. State,* 654 S.W.2d 444 (Tex.Cr.App.1983); *Freeman v. State,* 654 S.W.2d 450 (Tex.Cr.App.1983); *Denby v. State,* 654 S.W.2d 457 (Tex.Cr.App.1983); *Wilson v. State,* 654 S.W.2d 465 (Tex.Cr.App.1983). In the latter, for example, now Presiding Judge McCormick explained the reason, *viz:*

> "The State argues that in determining the sufficiency of the evidence an appellate court must view the evidence in the light most favorable to the prosecution. *The STATE relies on Girard v. State, [supra], and Griffin v. State,* [supra]. However, we should point out that footnote 5 in *Griffin v. State,* supra, recognizes a different standard of review in circumstantial evidence cases. In *Sewell v. State,* [supra], this Court stated that in circumstantial evidence cases the evidence is insufficient if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the accused. This is the standard that *must* be used in the appellate review of circumstantial evidence cases. In applying this standard to the instant case, we find the evidence adduced at trial is insufficient."

*Id.,* at 467. While they were pending rehearing the Court decided at least two more causes involving standards for appellate review.[8]

---

7. In note 2, at 199–200, the *Hankins* majority surveyed other states' treatment of the rule it announced, *viz:*

> "Many states have relied upon this rationale in holding that *the test for sufficiency of evidence on appeal is the same even where the conviction is based on circumstantial evidence.* [citation omitted]. For example in Maryland the test for sufficiency is stated in *Metz v. State,* 9 Md.App. 15, 262 A.2d 331 [ (1970) ], as follows:
> 'To be sufficient in law to justify a conviction, the admissible evidence adduced must show directly, or circumstantially, or support a rational inference of, the facts to be proved from which the trier of fact could fairly be convinced beyond a reasonable doubt, of the defendant's guilt of the offense charged.'
> The court specifically rejected the contention that the test to be applied is whether the circumstances are consistent with, or are such as to exclude every reasonable hypothesis or theory of innocence. It seems implicit that in states applying but one standard in assessing

evidentiary sufficiency, an argument for submitting a varying charge to the jury on circumstantial evidence would be rejected. Thus, although *we do not reach the issue of appellate review,* these cases are persuasive on the issue of jury instructions. [citations omitted]. Compare *United States v. Kolsky,* 423 F.2d 1111 (5th Cir.1970) (no jury instruction but standard on appeal varies in circumstantial evidence cases [i.e., reasonable hypothesis] )."

8. In *Allen v. State,* 651 S.W.2d 267 (Tex.Cr.App. 1983), a murder of a child case in which the accused stepfather contended that the evidence was insufficient in that "not excluded is an outstanding hypothesis that the mother of the deceased child caused his death." Although the evidence fairly inculpated him and the mother denied striking the child with anything, appellant argued that because she failed to testify she did not use other means to produce the fatal injury there remained a reasonable hypothesis other than his own guilt.

The State filed a motion for rehearing in each cause; coming hard on the heels of *Hankins v. State,* supra, we purposefully granted them and consolidated the causes to determine whether the "standard for appellate review" is the same for circumstantial evidence cases and direct evidence cases. *Carlsen,* at 448; *Freeman,* at 455; *Denby,* at 463; *Wilson,* at 470. Since the leading and concurring opinions, respectively, are identical in each case, examination and analysis will be on *Carlsen,* the first reported.

After reprising "the constitutional *minimum* [standard] required to enforce the due process right [in the Fourteenth Amendment]" announced in *Jackson v.*

In addressing the claim we noted that the Court had under consideration the standard of review to be applied to circumstantial evidence cases, referring to *Carlsen, Freeman, Denby* and *Wilson,* supra, *id.,* at 269; we mentioned the former rule of review reaffirmed in *Combs,* supra, but pointed out that *Combs* also acknowledged the "relevant question" of *Jackson v. Virginia, ibid.,* and recounted what the Court had said in *Griffin* and *Girard* about the "new rule" vis a vis "reasonable hypothesis" analysis. *Id.,* at 270.

Thus faced with three possible tests for review, the Court first examined the asserted reasonable hypothesis, *viz:*

"Appellant's suggestion that his wife, mother of deceased, inflicted the fatal injuries on Mike, is not a 'reasonable hypothesis other than guilt.' We may not alter evidence to fit hypothesis; rather a reviewing court must accept inculpatory circumstances and, upon that basis, then inquire 'if there is a reasonable hypothesis other than guilt which accounts for such circumstances,' *Girard v. State,* supra.... Thus, accepting, as we must, [certain undisputed facts], along with other circumstances that the hypothesis suggested by appellant does not account for, we find it is not a reasonable one."

*Ibid.*

Then we shifted to another one, *viz:*

"Furthermore, considering *all the evidence* in the light most favorable to the prosecution, *Jackson v. Virginia,* supra ..., we are satisfied that 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [original emphasis; citations omitted]."

And finally added:

"If need be, we also say that viewing the evidence in the light most favorable to the verdict, it is sufficient as a matter of law to support the judgment of the trial court."

Having covered all bases for review, the Court overruled the ground of error. *Ibid.*

*Virginia,* supra, n. 12, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573–574, the leading opinion concluded:

"It follows that circumstantial evidence should not be tested by an *ultimate* 'standard for review' different from direct evidence; the standard in both kinds of cases is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' Accord *Griffin v. State,* 614 S.W.2d 155 (Tex.Cr.App. 1981)."

*Id.,* at 449 (original emphasis); at 450, the concurrence agreed.

Still, we further agreed, there is no valid reason "for abandoning the utilitarian 'ex-

In June 1983 the Court again confronted a circumstantial evidence case in which defendant challenged sufficiency of evidence by positing a hypothesis that another person shot deceased. *Taylor v. State,* 653 S.W.2d 295 (Tex.Cr. App.1983). After presenting all relevant evidence in detail, *id.,* at 296–297, we expressed a belief that "a rational trier of fact could have found appellant caused [deceased's] death beyond a reasonable doubt under the charge of the court," *id.,* at 297–298, and analyzed the evidence according to *Griffin v. State* and *Jackson v. Virginia,* both supra, *viz:*

"Most compelling is the ballistic evidence that the deceased and Rat were shot with the same weapon; that weapon was placed in the hand of appellant by Rat. Clearly, Rat did not have the .38 revolver; Big Lawrence was not near the car at the time of the fray and the evidence indicates that it [sic: "he"?] was a friend of the deceased who, like deceased, was unacquainted with the others in the car. *Through a process of elimination* only appellant and [his companion] Marilyn Garrett remain as possible perpetrators of the murder. Under the trial court's charge, the jury was authorized to convict appellant if they found he intended to promote or assist in committing the murder and solicited, encouraged, directed, aided or attempted to aid another in its commission.

Taken a whole, the evidence would not support *any reasonable hypothesis other than that appellant,* either alone or as a party, *committed the offense in question;* accordingly, the ground of error attacking the sufficiency of the evidence to support the murder conviction is overruled."

*Id.,* at 298.

Again, those two decisions were made after *Hankins* abandoned the circumstantial evidence; they are followers of *Griffin* and *Girard* and harbingers of the opinions on rehearing in *Carlsen, Freeman, Denby* and *Wilson.*

clusion of outstanding reasonable hypothesis' analysis for *applying* the above 'standard for review' in circumstantial evidence cases [original emphasis]," alluding to "a process of elimination" utilized in *Taylor v. State,* supra; [9] conversely, "if the evidence supports an inference other than the guilt of the appellant, a finding of guilt beyond a reasonable doubt is not a *rational* finding." *Ibid.*

The leading opinion refused to accept an analysis the State suggested in its motions for rehearing—that focus of the inquiry be on "any evidence which could rationally support the verdict"—finding it "functionally indistinguishable from that specifically rejected by the Supreme Court in *Jackson,* supra, as violative of the Fourteenth Amendment." *Ibid.* We did acknowledge, however, that the motions were persuasive in arguing that this Court had never held that "the circumstantial evidence *analysis* constitutes a different *standard for review* from that to be ultimately applied in direct evidence cases." *Ibid.* (emphasis in original). In an accompanying note (which the

majority here seeks to minimize by claiming "there are cases supporting both approaches" but referring, however, to opinions mentioning decisions prior to *Carlsen, et al.,* see opinion, at 160), the leading opinion found its source and disavowed the idea that appellate review proceeds on "the presumption that the accused is innocent." [10] With that clarification, back in the text we went on to elaborate on the proposition argued by the State, *viz:*

> "... If the State's evidence supports an inference other than a finding of the essential elements of the crime, then no trier of the fact could rationally find the accused guilty *beyond a reasonable doubt*—and this is true irrespective of the character of the evidence."

*Id.,* at 449–450 (original emphasis).[11]

## II

### A

Having been squarely presented with the issue, in the *Carlsen* quartet this Court

9.　"We there cited the *Jackson* 'standard for review;' in actually assessing the evidence, no method *other than* a process of eliminating the guilt of others under the evidence could be fashioned to effectively conclude the evidence rationally established Taylor's guilt beyond a reasonable doubt. See also *Girard v. State,* 631 S.W.2d 162 (Tex.Cr.App.1982)." *Id.,* at 449 (original emphasis).

10.　In disavowing "language [in some opinions] apparently originating from the pen of an author or editor of *Texas Jurisprudence* [18 Tex. Jur. § 309, p. 432] ... that in circumstantial evidence cases an appellate court will 'review the evidence in light of the presumption that the accused is innocent,'" we pointed out:

> "Literally and technically *inaccurate,* the statement is revealed as a writer's attempt to convey the notion that the State's burden of adducing proof beyond a reasonable doubt is but a conceptual corollary of the presumption of innocence, and failure to produce that evidentiary quantum operates to absolve the appellant. (citations omitted)."

*Id.,* at 449–450, n. *. The following year the Court specifically pointed to this note and the accompanying text to reject an invitation to retain the presumption, and expressly to overrule all cases containing any such language, reaffirming that in both direct and circumstantial evidence cases "the reviewing court will look *at all the evidence* in the light most favorable to the verdict or judgment." *Houston v. State,* 663 S.W.2d 455 (Tex.Cr.App.1984).

11.　Despite the straight line of cases from *Griffin* through *Taylor* demonstrating an understanding that *Jackson v. Virginia* dictates a "legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution," 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573, the majority would read the quoted statement in the text above to "suggest" that "the State's evidence *alone*" is to be considered on review. Opinion, at 160. That reading is incorrect.

What the majority overlooks is that we did not undertake to reexamine the merits of those opinions on original submission. The Court granted leave to file motions for rehearings in the *Carlsen* et al. causes, and they were consolidated in order to address the core issue presented by the State, towit: "whether the 'standard for appellate review' is the same for circumstantial evidence cases and direct evidence cases." *Carlsen,* at 448. After quoting at length from controlling parts of *Jackson v. Virginia* containing the phrases "the record evidence" and "all of the evidence," headnote [5], that issue was decided in favor of the one "ultimate standard," headnote [6], i.e., the "critical inquiry" explicated in *Jackson v. Virginia,* 443 U.S. at 318–319, 99 S.Ct. at 2788–2789, 61 L.Ed.2d at 573–574. The statement in question came later while noticing a collateral point "persuasively argue[d]" by the State. It does not purport to be a legal holding, and is no more than a contextual truism. The majority is mistaken.

confirmed those decisional developments from *Griffin* through *Taylor*—rejecting the "any evidence" test on appellate review lately resurrected in *Combs,* supra, and replacing it with the "rationality" standard of *Jackson v. Virginia*—but made a conscientious, deliberate determination to retain in our appellate jurisprudence a clarified "reasonable hypothesis" analysis for *applying* that standard in a circumstantial evidence case. Nothing in *Jackson v. Virginia* precludes or inhibits this Court from making that determination—even though the Supreme Court declined to adopt the practice—for it as well serves "to vindicate the due process protection that follows from *Winship*[.]" 443 U.S. at 322, 99 S.Ct. at 2791, 61 L.Ed.2d at 576. Without being restrained by the supremacy doctrine from doing so, this Court kept that utilitarian method for state appellate courts in reviewing sufficiency of circumstantial as well as direct evidence on appeal. Thus the Court maintained a body of law, well known to the bench and bar, to guide appellate review by fourteen courts of appeals. If not its duty, such is certainly its prerogative.

Thereafter the Court demonstrated its ability to follow *Carlsen* et al., without perceptible difficulty in applying it to the facts of a given case. See, e.g., *Jackson v. State,* 672 S.W.2d 801, at 803–804 (Tex.Cr. App.1984) (evidence sufficient); *Johnson v. State,* 673 S.W.2d 190, at 195–197 (Tex.Cr. App.1984) (evidence insufficient); *McGoldrick v. State,* 682 S.W.2d 573, at 577–580 (Tex.Cr.App.1985) (evidence insufficient); *Beier v. State,* 687 S.W.2d 2, at 4–5 (Tex. Cr.App.1985) (when elements of offense correctly identified, evidence insufficient); *Chambers v. State,* 711 S.W.2d 240, at 244–245, 247–248 (Tex.Cr.App.1986) (after "weak circumstantial evidence case" test rejected, evidence sufficient); *Butler v. State,* 769 S.W.2d 234, at 238–240 (Tex.Cr. App.1989) (evidence sufficient).[12]

12. A problem did emerge during the latter part of this period, but it was more basic than melding "rationality" and "reasonable hypothesis" in the *Carlsen* quartet. Rather, the issue went to the proper analysis of the "critical inquiry" of *Jackson v. Virginia,* as well as the method of applying it.

In *Moreno v. State,* 755 S.W.2d 866 (Tex.Cr. App.1988) ("Moreno"), the Court reviewed that part of decision of the court of appeals finding the evidence insufficient to support a conviction for attempted capital murder in that it failed to sustain an intent on the part of accused to kill the victim. *Moreno v. State,* 711 S.W.2d 382, at 383–384 (Tex.App.—Houston [14th] 1986). In its petition for discretionary review the State claimed essentially that the sufficiency analysis employed by the court of appeals was faulty, *ergo* its finding of insufficiency is incorrect. *Moreno,* supra, at 866–867.

The *Moreno* court invoked and quoted the "critical inquiry" and "relevant question" passages, and then stated its view of their meaning, *viz:*

"Under the *Jackson* standard, the reviewing court is not to position itself as a thirteenth juror in assessing the evidence. Rather, it is to position itself as a final, due process safeguard ensuring only the *rationality of the factfinder.* The court is never to make its own myopic determination of guilt from a cold record. It is not the reviewing court's duty to disregard, realign or weigh evidence. This the factfinder has already done. The factfinder, best positioned to consider all the evidence firsthand, viewing the valuable and significant demeanor and expression of the witnesses, has reached a verdict beyond a reasonable doubt. [note omitted]. Such verdict must stand unless it is found to be irrational *OR* unsupported by more than a 'mere modicum' of the evidence, with such evidence being viewed under the *Jackson* light. Concrete application of the *Jackson* standard is made by resolving inconsistencies in the testimony in favor of the verdict. The court is to review the evidence *as it is already weighted by the jury's verdict* to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson, supra,* at 319–320, 99 S.Ct. at 2789–2790; *Carlsen, supra* at 448–449; *Combs, supra* at 716."

*Id.,* at 867. The Court proceeded to apply "this proper standard of review" to the sufficiency issue. *Ibid.* See followers, e.g., *Nevarez v. State,* 767 S.W.2d 766, at 768, n. 1 (Tex.Cr.App. 1989); *Matson v. State,* 819 S.W.2d 839, 847 (Tex.Cr.App.1991).

As indicated *ante,* at 166, n. 2, and 167, n. 3, however, the reviewing court has a more definitively responsible role when it comes to answer the "relevant question" in the "critical inquiry."

Development of underlying considerations by the Supreme Court support the proposition: an essential of the due process guarantee is that no person shall suffer a criminal conviction except on "evidence *necessary to convince* a trier of fact beyond a reasonable doubt of the existence of every element of the offense;" the *Winship* doctrine requires that "the factfinder will *rationally* apply that standard to the facts in evidence;"

## B

Lately, however, several causes brought here reveal a concerted endeavor to persuade the Court to recant the socalled "analytical construct" attributed to the *Carlsen* quartet. Actually *Griffin* is the genesis of the line of decisions leading to *Carlsen* et al., see *Carlsen*, at 449, and all judges participating in the latter decisions agreed to the formulation. Today that the majority succumbed to those entreaties is announced on the first page of its opinion, and its only remaining task is to attempt to justify the passing.

For reasons developed *ante*, in my judgment no rational jurist could have found the essential elements of the charges made by the State against the "analytical construct." By word or deed, the majority does not even attempt to show that it "conflicts directly" with *Jackson v. Virginia*, "distorts the meaning of 'proof beyond a reasonable doubt,'" or implies that "circumstantial and direct evidence are inherently different." See opinion at 155. Rather, the majority fashions a theory that interment of our circumstantial evidence charge removed "the very *basis and authorization*" for utilizing the "analytical construct" to review sufficiency of circumstantial evidence, resulting in what it labels "an analytical quandary," opinion at 157.[13] On that flawed premise it then proceeds to

but because a properly instructed jury and a trial judge may convict even though "no *rational* trier of fact could find guilt beyond a reasonable doubt," application of the beyond-a-reasonable-doubt standard to the evidence is "not *irretrievably* committed to jury discretion;" prerogative of factfinder has never included "a power to enter an *unreasonable* verdict of guilty;" as in a federal trial, such a conviction in state trial cannot "constitutionally stand;" a federal reviewing court has "a duty to *assess the historic facts* when ... apply[ing] a constitutional standard to a conviction obtained in a state court," just as the Supreme Court does when, for example, it reviews on direct appeal the facts pertaining to a claim that an involuntary confession was used "to *determine* whether the confession was wrongly admitted in evidence." *Jackson v. Virginia*, 443 U.S. at 316, 99 S.Ct. at 2787–2788, 61 L.Ed.2d at 572–573.

Those considerations explain why it is wrong simply to say, for example, a jury is "free to disbelieve" certain evidence; they also justify the definitive duty imposed by the Supreme Court on an appellate court in reviewing evidentiary sufficiency, *viz:*

"... Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a *legal conclusion* that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. [note omitted]. The criterion thus *impinges upon* 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law."

*Id.*, at 391, 99 S.Ct. at 2789, 61 L.Ed.2d at 574. See *Butler v. State*, 769 S.W.2d 234, at 238–239 (Tex.Cr.App.1989).

Indeed, the manner in which the Supreme Court made the inquiry by reviewing the record to determine that "a rational factfinder could have found the petitioner guilty beyond a reasonable doubt" proves verity of the proposition. To resolve "the crucial factual dispute" of sufficiency "to support a finding that he had specifi-

cally intended to kill [deceased]," and rejecting his claim of self-defense, it did not look at the evidence "as it is already weighted by the [trial court's] verdict," *Moreno*, supra, at 867; *Nevarez v. State*, supra. Instead, the opinion reviews in detail, analyzes and assays all relevant evidence going to both issues to find that "*a rational factfinder* could have inferred beyond a reasonable doubt" an intent to kill and that it was "*evident from the record*" that the trial judge found this story [about self-defense] incredible." *Id.*, 443 U.S. 324–325, 99 S.Ct. at 2792, 61 L.Ed.2d at 577–578. See also the evidentiary reviews in *Butler v. State*, supra, at 239–240; *Griffin, Girard*, and followers discussed *ante*.

**13.** The majority has the proverbial "cart before the horse." The fact of the matter is that in this jurisdiction a standard of appellate review for evidentiary sufficiency in a circumstantial evidence case *preceded* any requirement that a jury be thus charged. *Henderson v. The State*, 14 Tex. 503 (1855), and *Hunt v. The State*, 7 Tex. App. 212 (Ct.App.1879); Alley, *Elimination of the Texas Cautionary Circumstantial Evidence Charge*, 15 Texas Tech.L.Rev. 459, at 461–462 (1984).

In *Henderson v. The State*, supra, the Supreme Court of Texas surveyed rules laid down in works of learned commentators to conclude:

"... The result of the rules of law respecting the sufficiency of circumstantial evidence is very well and concisely stated by the reporter in the case of *Commonwealth v. Webster*, before cited [59 Mass. (5 Cushing) 295, 52 American Decisions 711 (1850)], thus: 'In order to warrant a conviction of a crime on circumstantial evidence each fact necessary to the conclusion sought to be established must be proved by competent evidence beyond a reasonable doubt; all the facts (that is, the facts necessary to the conclusion) must be consistent with each other and with the main fact sought to be proved; and the circumstances,

conjure up specters of a "thirteenth juror," *id.*, at 159; "confusion in the courts of appeals," *id.*, at 160; "confusion inherent in the application," *id.*, at 160; differences in "interpretation of precisely what evidence is to be considered," *id.*, at 160; and, finally, rejection by the Supreme Court and in other jurisdictions. *Id.*, at 161.

Only "rejection" is grounded in reality; the others are more or less refuted by the opinions of this Court such as *Griffin* and its many followings through *Butler*. Then, as if to bolster and gain support for its determination to overrule *Carlsen*, et al., the majority proposes to compensate for loss of charge on circumstantial evidence by taking a step the Court has forever consistently and emphatically rejected: mandating a prescribed definition of "reasonable doubt." *Id.*, Part II, at 161–162. See *Hankins*, supra, at 199, n. 1; Miller, J., concurring and dissenting, at 200 ff. Today, it all seems hardly worth the candle.

### C

Dictating that the factfinder consider a definition of reasonable doubt will not re-

solve the pressing problem outlined in note 12, *ante*. Just now there are divergent views among members of this Court about the proper method for a reviewing court to conduct an evidentiary analysis in making the "critical inquiry" and in answering the "relevant question" prescribed in *Jackson v. Virginia*. We are unable to settle on the extent to which a reviewing court may "impinge[ ] upon 'jury' discretion" in applying the "familiar standard" in a manner contemplated by the Supreme Court, i.e., "giv[ing] full play to the responsibility of the trier of fact *fairly* to resolve conflicts in the testimony, to weigh the evidence, and to draw *reasonable* inferences from basic facts to ultimate facts." *Id.*, at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. Compare *Moreno v. State*, 735 S.W.2d 866, at 867 (Tex.Cr.App.1988) (verdict must stand unless irrational *or* unsupported by more than mere modicum of evidence), with *Butler v. State*, 769 S.W.2d 234, at 239 (Tex.Cr. App.1989) (review entire body of evidence

---

taken together, must be of a conclusive nature, leading, on the whole, to a satisfactory conclusion, and producing in effect a reasonable and moral certainty that the accused, and no other person, committed the offense charged."
*Id.*, at 513–514. And on that basis the Court found the evidence sufficient. *Id.*, at 515–517.

That formulation became known as the "Webster" charge, and spread to many other jurisdictions, Note, *The Circumstantial Evidence Charge in Texas Criminal Cases: A Retrograde Doctrine*, 55 Texas L.Rev. 1255, at 1258 (1977), including, of course, our own. After using it as a standard of appellate review for twentyfour years, in *Hunt v. State*, supra, the Court required trial courts to incorporate the cautionary language on circumstantial evidence into the jury charge, *viz*:

"It is no new principle of the law in this State that to justify a conviction upon circumstantial evidence alone the facts relied on must be absolutely incompatible with the innocence of the accused, and incapable of explanation upon any other reasonable hypothesis than that of guilt. [citations omitted]. If this so, certainly a jury called to pass upon a case of that character should be informed of the rule as part of the law applicable to the case. * * * * [W]hen a conviction is sought upon circumstantial testimony alone ... without some definite rule for their guidance—a

rule which will serve to impress itself on their minds, and cause them to weigh most carefully all of the facts, isolated or connected, from which they must reach their conclusion by reasonable inference—they are not unlikely, in many instances, to found their verdict upon strong suspicion or mere probability, which will not suffice under the law. *Tollett v. The State*, 44 Texas, 95."
*Id.*, at 235–236. After reviewing prior cases on the subject, the Court concluded:

"The usual rule in relation to circumstantial evidence, which is a familiar one to the profession ... is to be regarded rather as a rule of law applicable to all cases in which a conviction is sought upon circumstantial evidence alone, and the giving of which to a jury in the general language usually employed, cannot specially affect any one fact in evidence or materially prejudice the prosecution.... The failure of the court to give an instruction upon this branch of the law was error which will require a reversal of the judgment."
*Id.*, at 237–238.

Meanwhile, the Court declined an invitation to require a jury charge "to explain what is a reasonable doubt." *Massey v. The State*, 1 Tex. App. 563, at 570 (Ct.App.1877). Until today the Court consistently rejected the same invitation; now *sua sponte* it mandates "a definitional instruction." Opinion, at 161–162.

to determine requisite proof of every element, not just plausible explanation of offense); see *Nevarez v. State*, 767 S.W.2d 766, at 768, n. 1 (Tex.Cr.App.1989) (if trier of fact believes "more than a mere modicum" of evidence establishes guilt, reviewing court not in a position to reverse judgment for insufficiency), and compare with *Combs v. State*, 643 S.W.2d 709, at 716 (Tex.Cr.App.1982) (if trier of fact believes "any evidence" establishes guilt, reviewing court not in a position to reverse judgment for insufficiency), overruled in *Butler v. State*, supra; compare *Saxton v. State*, 804 S.W.2d 910, 914 (Tex.Cr.App.1991) (credibility determination of defensive evidence is solely its province, so jury is "free to accept or reject" it), with *Saunders v. State*, 817 S.W.2d 688 (Tex.Cr.App.1991), at 693 (rational jurors may not "utterly disregard undisputed evidence" without sensible basis for thinking it unreliable).[14]

Unless this basic conflict is resolved, to introduce a new factor into the exercise will surely serve to compound our problem. Rather than initiate another round of splintered decisions over the effect of trading away an "analytical construct" for a definition of "reasonable doubt," the Court would be well advised to keep that which has proven workable and effective in this jurisdiction since 1855, when in *Henderson v. The State* our Supreme Court reviewed sufficiency of circumstantial evidence under the "*Webster* charge."

## D

For those reasons, and because in my judgment an analysis of all the evidence pursuant to *Griffin* and its progeny produces the sound conclusion that any rational trier of fact could have found all essential elements of the offense alleged, in that a hypothesis of a person other than appellant driving the pickup into the service station is not reasonable, I would reverse the judgment of the court of appeals and affirm the judgment of conviction.[15]

### APPENDIX 1

No. 2–88–140–CR
COURT OF APPEALS

SECOND COURT OF APPEALS
DISTRICT OF TEXAS

FORT WORTH

Douglas Alan Geesa

Appellant

vs.

The State of Texas

State

FROM CRIMINAL DISTRICT COURT
NO. 2 OF TARRANT COUNTY

OPINION

Douglas Alan Geesa, appellant, was convicted by a jury of unauthorized use of a motor vehicle, see TEX. PENAL CODE ANN. sec. 31.07(a) (Vernon 1989), and sentenced to forty years confinement in the Texas Department of Corrections. We sustain his complaint on appeal that the evidence was insufficient to support his conviction, reverse the judgment of the trial court, and remand the case to the trial court with an instruction to enter a judgment of acquittal.

In considering Geesa's insufficient evidence points, we must review the entire body of evidence to determine whether the

---

**14.** For a "construct" used by the U.S. Court of Appeals for the Fifth Circuit in ordering relief from a burglary conviction in a habeas corpus action from Texas, see, e.g., *Clark v. Procunier*, 755 F.2d 394 (5th Cir.1985), *viz:*

> "If the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged, then a reasonable jury must necessarily entertain a reasonable doubt."

*Id.*, at 396, quoting *Cosby v. Jones*, 682 F.2d 1373, 1383 (11th Cir.1982); citing also *Turner v. McKaskle*, 721 F.2d 999, 1001 (5th Cir.1983). *Id.*, n. 7.

**15.** Because the opinion of the court of appeals is unpublished and the majority opinion here does not address the underlying evidence, I append hereto the opinion below, the factual summary presented by the State, and appellant's synopsis of the evidence.

State has proved every element of the alleged crime beyond a reasonable doubt. *See Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989). An essential element of the offense is that Geesa operated the motor vehicle. *See Jackson v. State,* 645 S.W.2d 303, 305–06 (Tex.Crim.App.1983). After reviewing all of the evidence in the light most favorable to the State, we hold that the evidence that Geesa operated the motor vehicle is insufficient to sustain his conviction.

The State introduced the evidence of three witnesses to establish the identity of the unauthorized driver of the motor vehicle, a pickup. The witnesses were: Guy Baird, whose attention was drawn to the pickup by its unexplained and suspicious appearance at a closed Texaco service station; Leroy Pierce, the arresting officer; and Stewart Mark Brozgold, a Crime Scene Investigator for the Arlington Police Department. Officer Pierce testified that he responded to a radio dispatch by driving to the Texaco service station where he saw Geesa standing in the company of another Arlington police officer. Officer Pierce observed the pickup engine was hot, as if it had just been driven, and that Geesa matched the radio-dispatched description of the driver he was given, that of a white male wearing a white tee shirt and cream-colored pants. The description apparently was given by Baird, who called the Arlington Police Department when he became concerned with the pickup's presence at the Texaco service station located approximately 150 ft. from his place of employment at 3:30 a.m. Baird did not recall giving the police dispatcher a description of the driver. He testified that it was dark and he was unable to identify Geesa as either of the pickup's two occupants.

Brozgold testified he found several packages of cigarettes on the left side of the dash above the steering wheel and he was able to identify fingerprints found on the cigarette packages as Geesa's. According to Pierce, Geesa denied any knowledge of the pickup truck, claiming that he had walked to the station and was there to collect discarded items, although the items found on his person had apparently been stolen from the Texaco service station. Although the police dispatcher reported two suspects were involved, only Geesa was apprehended.

Although it is clear from the evidence that Geesa was in some way involved with the presence of the pickup at the Texaco service station, and it appears he might very well have been charged with burglary or theft, we hold the evidence is insufficient to prove the essential element of operation of a motor vehicle. Geesa is incriminated by his statements to the officer, which are inconsistent with the cigarette packages found in the interior of the truck. However, his conduct and the fact that the cigarettes were found inside the pickup, although certain proof of his involvement with the truck, create only a strong suspicion or mere probability of his guilt of the offense charged and such will not support his conviction on appeal. *See Avina v. State,* 751 S.W.2d 318, 320 (Tex.App.—Fort Worth 1988, pet. ref'd).

The State urges that the similarity between the manner in which Geesa was clothed at the time of his arrest and the description of the driver's clothing contained in the police dispatch is sufficient when coupled with the other evidence to identify Geesa as the driver, relying on the Court of Criminal Appeals opinion in *Bonner v. State,* 640 S.W.2d 601, 603 (Tex. Crim.App. [Panel Op.] 1982). The facts of *Bonner* are easily distinguishable from the present case. Bonner was convicted of burglary of a vehicle following his arrest by a security guard at an automobile dealership. The security guard first observed Bonner at a distance of 6 to 12 ft., and although he was unable to see Bonner's face, he "observed carefully what the man was wearing." *Id.* at 602. Minutes later he arrested Bonner and at trial testified that Bonner "was dressed identically to the person he had earlier observed...." When first observed, Bonner appeared to be jacking up a pickup truck from which, the witness later discovered, the front and right rear tires and the spare tire had been removed. In contrast, Pierce had only tes-

tified that Geesa's attire matched the description given by the dispatcher as to the white tee shirt and the cream-colored pants.

Because we find that a rational trier of fact could not have excluded every reasonable hypothesis except Geesa's guilt, we reverse the trial court's judgment and remand the case to the trial court with instructions to enter a judgment of acquittal. *See Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *also Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

/s/ David F. Farris
David F. Farris,
Justice

PANEL B

FARRIS, LATTIMORE, AND MEYERS, JJ.

DO NOT PUBLISH

TEX.R.APP.P. 90(e)

## APPENDIX 2

### FACTUAL SUMMARY

Store clerk Guy Baird's suspicions were aroused when a light-colored pickup pulled into the driveway of a closed Texaco service station around 3:00 a.m. From his vantage point across the street, Mr. Baird saw the pickup stay parked for about 10 or 15 minutes and then back toward the service bays. He saw the two occupants of the pickup move about in front of the station. One was wearing dark-colored clothing and the other light-colored clothing. Mr. Baird called the police and described what he "saw out there," but he could not remember what he told the police dispatcher concerning the driver's description.[1] R. V—35–38, 42.

When Officer Leroy Pierce arrived at the Texaco station following a radio dispatch, he found that another officer had already responded and was standing with Appellant. R. V—48–49. Appellant told Officer

Pierce that he had never seen the truck before and that he was picking up discarded items from the station. R. V—57. The pickup engine was hot, there were 10 full quarts of Texaco oil in the bed of the pickup, and Appellant was carrying a quart of Texaco oil and a quart of Texaco transmission fluid. R. V—49–50, 57. The service station's display rack had been stripped of its oil. R. V—51.

A second radio transmission advised Officer Pierce that the caller (obviously Mr. Baird) said the driver wore a white T-shirt and cream-colored pants. R. V—54. That is what Appellant had on. R. V—54.

Appellant's fingerprints were on three packages of cigarettes found in the pickup on the left side of the dash above the steering wheel. R. V—94–96.

The pickup had been stolen some 3½ weeks earlier; Appellant had no permission to use it. R. V—17, 19, 21, 50. The other occupant of the pickup was never apprehended. R. V—53.

## APPENDIX 3

### II. A Synopsis of the Evidence

Given the nature of this review, a brief overview of the evidence adduced at trial is necessary.

The owner of an Arlington, Texas business testified that on the morning of April 13, 1987 a beige colored pick-up belonging to his company was missing from the parking area behind his store (R. V–17). The gate to the parking area was broken as if a vehicle had been driven through it (R. V–18), but there was no other evidence adduced at this trial regarding the theft of the truck. Indeed, in the instant case no witness ever testified that he knew or had information about who took the vehicle nor did any witness say he had seen anyone, let alone the Appellant, driving the truck on or about the date of the alleged offense.

Several weeks later, on May 6, 1987, a clerk in a gas station observed a light colored pick-up truck pull into the Texaco

---

1. The opinion of the Court of Appeals recites that Mr. Baird "did not recall giving the police dispatcher a description." Slip opin., p. 3.

Baird said only that he could not remember exactly what he said. R. V—38.

station across the street from where he was working. It was then between 3:00 and 3:30 a.m. (R. V–35). The witness said that he could not see the faces of the two individuals in the truck and, therefore, he was unable to identify anyone as the driver of the vehicle. Indeed, when given an opportunity, outside the presence of the jury, the witness could not even identify the Appellant as one of the persons he saw at the Texaco Station that morning (R. V–31). The witness did say that one person had on light colored clothing while the other wore dark clothing, but he could not add anything beyond that. Because of the time of day and the fact that the vehicle remained at the station across the street longer than usual, the witness became suspicious and telephoned the police (R. V–37).

The responding police officers found a pick-up truck parked in front of the bay doors of the Texaco station and an individual, identified in court as the Appellant, standing at the southwest corner of the station (R. V–48, 49). In the bed of the truck the officer found cans of Texaco brand oil and transmission fluid (R. V–31). The policeman then ran a check on the vehicle and, upon learning it had been reported stolen, he arrested the Appellant for theft of the truck as well as theft of the oil found in the back of the vehicle (R. V–53, 55).

A crime scene officer testified that he recovered three packs of cigarettes from the dash of the truck, each of which had the Appellant's fingerprints on the cellophane wrapper (R. V–95, 96). There was no evidence the Appellant's fingerprints were found anywhere on the vehicle itself, such as the dash, the shift lever, the steering wheel or the door handle.

The "original dispatch" to the responding police officer did not describe which of the two persons seen in the vehicle was the driver (R. V–47, 48). The only evidence adduced at this trial that the Appellant was the driver of the truck was the testimony of the responding officer who said that "a witness" apparently telephoned or otherwise communicated with the dispatcher

who radioed the officer that the driver of the truck was wearing a white T-shirt and "cream-colored pants" (R. V–54). The reporting witness, the clerk in the gas station across the street, had earlier testified that he had seen two persons in the truck, one wearing light colored clothing and the other wearing dark clothing. Thus, if the "information" told to the dispatcher by the unknown and unnamed "witness" is to be believed, by elimination, the Appellant must have been the driver. The problem, of course, is that the record is silent as to who this witness was and how did he know what he said he knew. In its Brief the State attempts to brush this off with the mere conclusionary statement that the unnamed witness "obviously" was the service station attendant (State's Brief, page 3). The Appellant would ask the State for a citation to any testimony or evidence in the record of the trial that indicates that this is so, let alone that it is "obvious". That service station attendant testified at trial and was in a position to tell the jurors about the clothing worn by the driver, yet all he said was that there were two people at the scene and one wore light colored clothes and the other wore dark.