Barnett v. Wasik 















IN THE
TENTH COURT OF APPEALS
 

No. 10-92-302-CV

     JAMES BARNETT,
                                                                                              Appellant
     v.

     BRENDA K. WASIK,
                                                                                              Appellee
 

From the 361st District Court
Brazos County, Texas
Trial Court # 30,767-361
                                                                                                    

MEMORANDUM OPINION
                                                                                                    

      This appeal was perfected from a judgment of dismissal signed on November 2, 1992.
      The transcript was filed on December 31, 1992. The statement of facts should have been filed 
by January 4, 1993, but was not received until January 11, 1993. Counsel were notified that it
was neither timely received nor postmarked. A motion for extension of time for filing the
statement of facts was not filed within 15 days of the due date reasonably explaining why it was
not timely filed and, therefore, cannot now be considered.
      Because neither a motion for extension of time for filing the brief nor an appellant's brief has
been received, the appeal is dismissed for want of prosecution. See Tex. R. App. P. 74(l)(1).
                                                                                     PER CURIAM
Before Chief Justice Thomas,
      Justice Cummings, and
      Justice Vance
Dismissed
Opinion delivered and filed March 10, 1993
Do not publish 



                           

          We must decide whether a driver, who has a policy of liability insurance in effect at the
time of an accident but allows his driver's license to be suspended after a judgment is rendered
against him, is entitled to have a later charge of "driving while license suspended" dismissed when
he produces the insurance policy at the criminal trial. We conclude that he is not. We reverse the
conviction, however, because the court failed to charge the jury on the definition of reasonable
doubt.
PROCEDURE
          Howard Lohmuller was convicted in a jury trial of driving a motor vehicle while his license
to drive was suspended. Tex. Rev. Civ. Stat. Ann. art. 6701h, § 32(c)(1)(A) (Vernon Supp.
1996). The jury assessed 30 days in jail, which it elected to probate, and a $100 fine. Id. §
32(c)(4)(A) & (B). Lohmuller represented himself at trial and does so on appeal. He asserts four
points of error: (1) that his right to a speedy trial was violated; (2) that the information was
insufficient to charge him with the crime; (3) that he conclusively established a defense to the
charge; and (4) that the law is unconstitutional and he was denied due process. 
THE TRIAL
          The State's only witness, Highway Patrolman Steve McKinney, testified that he and
Trooper Brad Zolinsky encountered Lohmuller on Interstate 35E, about six miles south of
Waxahachie, on May 22, 1993. They stopped him because he was not wearing a seat belt. A
check of Lohmuller's driver's license revealed that it was under a suspension order.
          State's Exhibit 1, a certificate from the Driver Records Bureau of the Driver Licensing and
Control Service of the Texas Department of Public Safety, shows that Lohmuller's driver's license
was suspended in case number OOJ1372217 because of an unpaid judgment arising out of an
accident in Dallas on March 15, 1991. The exhibit includes a certified copy of the order that the
Department issued on August 6, 1992 suspending Lohmuller's license pending the (1) filing of
evidence that the judgment rendered by the Justice of the Peace in Dallas had been satisfied, (2)
filing of proof of financial responsibility for the future, and (3) payment of a reinstatement fee of
$50. The order required Lohmuller to surrender his driver's license, registration receipts, and
license plates.
          McKinney also testified that the Department's records showed that Lohmuller's license was
still suspended on the date of the trial, August 23, 1995.
          After the State rested its case, Lohmuller made a motion to dismiss based on defects in the
information. When the court denied his motion, he initially declined to offer evidence but, after
an extended discussion with the court out of the jury's presence, testified on his own behalf. He
said that he had a policy of insurance in effect on the date of the 1991 accident in Dallas, that he
felt that the other driver's claim was "phony," and that the other driver's insurance company was
the plaintiff in the justice-court case that resulted in the judgment against him. His argued that,
because he had an insurance policy in effect at the time of the accident, his license could not have
been validly suspended. Defendant's Exhibits 1 and 2 show that Lohmuller was the insured in a
six-month automobile policy which became effective at 12:01 a.m. on March 15, 1991, issued by
Farmers Texas County Mutual Insurance Company.
          On cross-examination, Lohmuller admitted that he was driving in Ellis County on May 22,
1993. He would not agree that his license was suspended on that day, and he denied ever having
seen the suspension order issued by the Department. He said that he had not driven again since
that day.
SPEEDY TRIAL
          Lohmuller first asserts that the trial, held more than two years after he was charged,
violated his right to a speedy trial under the Sixth Amendment of the United States Constitution
and article 32A.02 of the Code of Criminal Procedure. U.S. Const. amend. VI; Tex. Code
Crim. Proc. Ann. art. 32A.02, §1(3) (Vernon 1989).


 The information was filed on June 9,
1993. On July 12, 1995, Lohmuller filed a "Motion to Quash or Dismiss," asserting that the State
was not ready for trial. The motion was denied.
          As the State points out, no right to a speedy trial exists by statute. See Cover v. State, 913
S.W.2d 611, 620 (Tex. App.—Tyler 1995, pet. ref'd). Further, it says that Lohmuller never
asserted a constitutional right to a speedy trial.
          The right to a speedy trial is subject to a balancing test to determine whether the right has
been abridged. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101
(1972). The court should inquire about (1) the length of the delay, (2) reasons for the delay, (3)
the circumstances of the defendant's assertion of the right, and (4) any prejudice that resulted from
the delay. Id. Because Lohmuller did not request that the court make such an inquiry, he has not
preserved this claim for our review. We overrule point one.
THE INFORMATION
          Lohmuller next asserts that the information is invalid because (1) "it cannot be established
when the information was presented to the court," (2) it was not signed by the county attorney
"officially," and (3) it is fundamentally defective because it does not allege that Lohmuller had a
statutory duty.
          Objections to a charging instrument must be made before the date on which a trial on the
merits begins. Tex. Code Crim. Proc. Ann. art. 1.14(b) (Vernon Supp. 1996); DeDonato v.
State, 819 S.W.2d 164, 167 (Tex. Crim. App. 1991). Neither of Lohmuller's two pretrial
motions attacked the information on the grounds now asserted on appeal.


 Lohmuller first called
the court's attention to the alleged defects in the information after the State had rested its case-in-chief. Thus, all defects in the charging instrument were waived. Id. We overrule point two. 
LIABILITY INSURANCE
          Lohmuller's primary assertion, at trial and on appeal, is that he had a policy of insurance
in force at the time of the 1991 accident which resulted in his license being suspended and that the
existence of that policy is a complete defense to the 1993 charge of driving with a suspended
license. Further, he maintains that filing proof of insurance with the Department of Public Safety,
as he had done by the time of trial, removed the suspension retroactively, so that the record stands
as though the suspension were never issued. Both reasons, he says, are sufficient to justify an
acquittal.
          Before presenting the charge to the jury, the court, Lohmuller, and the prosecutor
discussed whether the presentation of an existing policy to the Department would retroactively lift
a suspension. The court observed that Defendant's Exhibit 2 contained a notice from the
Department dated August 10, 1995, thirteen days before trial, requesting a letter from the
insurance company acknowledging coverage and stating, "Upon receipt of the letter from your
insurance company, further consideration will be taken in the above referenced accident case." 
The court then stated:
Well, I don't know. If nothing else, I'll make it real clear on the record so that if
he wants to appeal, he can do that and an appellate court can tell us he's right, you can
even go backwards and say that he should have been unsuspended from day one and
therefore if you've got a DWLS during that period of time, you shouldn't have . . . . I
don't know that that's the law or not.
          Lohmuller simply points to section 1D of article 6701h, the Safety Responsibility Law (the
Act), as providing an unambiguous defense to the criminal charge when a liability insurance policy
was in force on the day of the occurrence that led to the suspension. Tex. Rev. Civ. Stat. Ann.
art. 6701h, § 1D (Vernon Supp. 1996). Section 1D provides:
It is a defense to prosecution under this Act if the person charged produces in court
an automobile liability insurance policy or a certificate of self-insurance previously issued
to that person that was valid at the time that the offense is alleged to have occurred and the
charge shall be dismissed.
Id.
          The State argues that, after a suspension order is issued by the Department, a criminal
prosecution for driving while subject to that suspension may be maintained at any time until the
suspension is lifted by the Department. In other words, the administrative acts of the Department
determine whether a suspension was in effect for purposes of the penal provision making it an
offense to drive while a suspension order remains in effect.
          The Act covers definitions, administration, security following an accident, proof of
financial responsibility for the future, violations of the Act and penalties for those violations, and
general provisions. Id. §§ 1—43 (Vernon 1977 & Supp. 1996). In 1981, the legislature added
sections 1A through 1G.


 Although placed in the existing part of the Act that defines words and
phrases, these additional provisions generally strengthened and clarified the requirements for
maintaining liability insurance on most vehicles operated within the state, required that evidence
of insurance be carried in the vehicles and displayed to a peace officer upon request, and imposed
penalties such as suspending driver's licenses and registrations for failing to maintain the required
insurance protection. Id. The current versions of sections 1A and 1B of article 6701h require that
insurance be maintained and that evidence of insurance be carried in each vehicle and displayed
upon request. Id. §§ 1A, 1B (Vernon Supp. 1996). Section 1C imposes specific penalties for
failing to do so. Id. § 1C. Section 1D, as amended by the Legislature in 1983, provides "a
defense to prosecution under th[e] Act." Id. § 1D.
          Unfortunately, the Act is less than clear about the instances in which section 1D applies. 
See id. If Lohmuller is correct and the Act is read literally, section 1D provides for a defense to
any prosecution under the entire Act. We believe, however, that the placement of section 1D and
the circumstances under which it was amended demonstrate that it applies only to prosecutions
brought under section 1C. Contrasted with the penalties for failing to maintain insurance as
described in section 1C, the offense of and penalties for driving while one's license is suspended
are contained in section 32 of the Act. Id. § 32. Section 32 covers violations of all suspensions
under the Act, no matter how the suspension occurred. Id. Section 32(c)(3) provides a defense
to a driver who did not receive actual notice of a suspension or revocation order.


 Id. § 32(c)(3). 
          We are further persuaded that the defense in section 1D does not apply to every prosecution
under the entire Act by the fact that the overall scheme of the Act allows one in Lohmuller's
position other opportunities to present his defense to a suspension resulting from not having
insurance coverage at the time of an accident. He or his insurance company could have defended
the "phony" claim in justice court. He could have contested the suspension order before or after
it was issued. He could have notified the Department that he held a policy of insurance before
being arrested for driving in violation of its suspension order. Instead, he waited until two years
had elapsed after being charged and almost until the day of trial to begin the process of notifying
the Department that he had a policy of insurance in force on the date of the accident.
          For these reasons, we conclude that the legislature did not intend for section 1D to provide
a defense to one charged under section 32 of the Act. Id. §§ 1D, 32.
          Lohmuller's second argument under this point—that the suspension had been lifted
retroactively when he filed corrective documents with the Department—is refuted by the record. 
As of the date of trial, the Department had not accepted the filings and had notified him that
further action on the part of his insurance company was necessary. Additionally, we note that the
Act speaks in terms of "reinstat[ing]" and "restor[ing]" a person's driving privilege. Id. §§ 13(c),
16(b) (Vernon 1977). Nowhere in the Act do we find that the termination of a suspension operates
retroactively.
          We overrule point two.
CONSTITUTIONALITY
          Lohmuller's driver's license and registration were originally suspended on August 6, 1992
under section 13(a) of the Act. In his final point, Lohmuller asserts that section 13 is
unconstitutional because (1) it "appears to be an ex post facto law which is prohibited by Article
I section 9c to the federal government and section 10a to the states" and (2) the suspension took
place without a prior hearing or a post-suspension hearing. Section 13 is ex post facto, he says,
"because I had a defense to the alleged judgment against me, that defense being that the plaintiff
submitted a false insurance claim, as there was no damage done." He says that the denial of a
hearing deprived him of "a fair chance to tell his side of the story prior to or shortly after the
declaration by the state that his license was suspended."
          Lohmuller's reliance on the ex post facto provision is misplaced. An ex post facto law is
one that (1) criminalizes formerly innocent acts done before the law is passed, (2) aggravates a
crime or makes it greater than when committed, (3) increases the punishment after the act was
committed, or (4) alters legal rules so that less or different evidence is required to convict than was
required at the time of commission. Hill v. State, 146 Tex. Crim. 333, 171 S.W.2d 880, 883,
cert. denied, 320 U.S. 806, 64 S.Ct. 72, 88 L.Ed. 487 (1943). He does not assert that the Safety
Responsibility Law does any of those; rather, he relies on the fact that he had a defense to the
1991 justice-court action.
          With respect to Lohmuller's second approach to the constitutionality of the statute, we note
that the Department's suspension order was based on a judgment of a court. Because a justice-court judgment is entitled to a presumption of regularity, we must presume that Lohmuller had
notice of that proceeding. The suspension by the Department is automatic when it is presented
with a judgment of a court of competent jurisdiction that establishes liability arising out of a motor
vehicle accident. Tex. Rev. Civ. Stat. Ann. art. 6701h, § 13(a) (Vernon 1977).
REASONABLE DOUBT
          In reviewing the court's charge, we find that the court did not include the required
definition of "reasonable doubt." Geesa v. State, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991). 
We have previously held that the right to the definitional instruction on reasonable doubt is an
absolute right which we must implement without the procedural formality of a point of error. See
Kieschnick v. State, 911 S.W.2d 156, 163 (Tex. App.—Waco 1995, no pet.) (on rehearing). 
Thus, we hold that the court erred when it failed to include the mandatory definitional instruction
on reasonable doubt in the charge given to the jury. Id. Because the error is not subject to a harm
analysis, we must reverse the judgment. Id.
CONCLUSION
          Although no error occurred at trial other than the failure to charge the jury on the definition
of reasonable doubt, we reverse the judgment and remand for a new trial. 
          We note that Lohmuller's brief requested a "writ of mandamus" to "order the Texas
Department of Public Safety to terminate the suspension of appellant's expired driver's license." 
However, before submission, he filed a motion to withdraw this request, saying that the
Department has terminated its suspension. The motion to withdraw is granted. 
 
                                                                                 BILL VANCE
                                                                                 Justice


Before Justice Cummings and
          Justice Vance
Reversed and remanded
Opinion delivered and filed April 17, 1996
Publish