**Charles Ray HEBERT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–92–182 CR.**

Court of Appeals of Texas,
Beaumont.

April 28, 1993.

Answer "He was a general agent" or "He was not a general agent".

Douglas M. Barlow, Beaumont, for appellant.

Tom Maness, Dist. Atty., Rodney D. Conerly, Asst. Crim. Dist. Atty., Beaumont, for State.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

The appellant was convicted of aggravated assault on a peace officer[1] and as a habitual felony offender[2]. Punishment was assessed by the trial court at 35 years imprisonment in the Institutional Division of the Texas Department of Criminal Justice. From this judgment and conviction, the appellant has perfected this appeal.

The appellant alleges one point of error. The appellant complains that he was not afforded effective assistance of counsel at trial.

### Factual Summary

On the night of June 15, 1991, at approximately 11:30 p.m., Officer Goldberg was summoned by Roland Degeyter, a patron of the Park Central Recreation Center, which is located behind Central Mall in Nederland. At the time, Officer Goldberg—being off duty—was serving as a security guard for the recreation center. This recreation center had a bingo area, bowling alley area, pool table area and lounge area. Officer Goldberg was a certified peace officer. His duties as a security guard for the recreation center were primarily to walk through the parking lot and through the lounge area.

Degeyter had gone outside on that evening to notify Officer Goldberg that there was a disturbance in the lounge that required the officer's attention. The officer proceeded immediately into the lounge area. Upon entering the lounge or bar area, the officer first approached J.D. McKusker who was sitting at the bar. McKusker pointed in the direction where the appellant was sitting. The appellant was sitting in the pool table area.

The area where the pool table was located was fairly dark due to the colored lights. When Officer Goldberg approached the appellant, he placed himself between the pool table and the appellant. He noticed that the appellant had a tattoo on his neck. Officer Goldberg was wearing his uniform at that time. As a matter of fact, Officer Goldberg testified that he was wearing the same uniform—being the same color, the same patches, the same black tennis shoes—at the trial that he was wearing the

1. Tex.Penal Code Ann. § 22.02(b) (Vernon 1989).

2. Tex.Penal Code Ann. § 12.42(d) (Vernon Supp. 1993).

night the offense occurred. His uniform had his badge attached to it. Officer Goldberg had his gun and a radio attached to his hip. He also had a flashlight.

When he approached the appellant, he asked the appellant in a loud but firm voice (due to the fact that a band was playing in the background) to come outside. The officer testified that he identified himself as a police officer. The appellant was looking down at the floor when the officer approached him. The officer flashed his flashlight on the appellant and then used the flashlight to shine on his shirt to indicate that he was a police officer. He asked the appellant again to step outside; however, the appellant began to curse. When the appellant began cursing, the officer again asked him to step outside.

The appellant stood up, making a fist and swinging at the officer, and struck the center of Officer Goldberg's chest. The blow landed a couple of inches below his chin. The blow was intended to hit the officer in his face; however, the officer was able to back up, resulting in the blow striking his chest. Because of the blow, the officer was knocked off-balance. The appellant then delivered several other blows to the officer's face. The officer was able to withstand these blows.

Officer Goldberg was able to place his handcuff on the appellant's left wrist. The officer weighed about 260 lbs. and was 5'11"; the appellant weighed about 175 lbs. and was 5'10". The officer attempted to handcuff the other wrist of the appellant when he was hit from behind on the head. The officer was on top of the appellant at the time. The hard blow to his head caused the officer to be knocked off of the appellant. The officer testified it was necessary for him to maintain control of the handcuff because he knew if he let go that the defendant would use it against him. The handcuff is made of steel and has a sharp point. The officer stated that if the appellant swung his arm around, the handcuff could reach a velocity of 50 miles an hour. Thus the exposed point would act as a knife, stabbing anyone with whom it came into contact. The officer could not

exactly remember all the details after he was hit by the hard blow on the head, but he does remember being punched several times; however, during this confrontation he was able to maintain control of the handcuff. Ultimately, he was able to regain control of the situation by swinging or throwing the appellant through at least five or six tables which were located near them. While the appellant and the officer were fighting, someone hit the appellant on the head giving the officer some assistance in subduing the appellant. The appellant was handcuffed and placed under arrest.

### The Standard of Review

 In Texas, a defendant in a criminal case is entitled to reasonably effective assistance of counsel. *See, Wilkerson v. State*, 726 S.W.2d 542 (Tex.Crim.App.1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A defendant seeking relief under *Strickland* must show that his trial counsel's performance was deficient and that this deficient performance prejudiced the defense to such a degree that appellant was deprived of a fair trial. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result.

 The right to effective assistance of counsel is not a right to error free counsel. *See* TEX. CONST. art. I § 10. There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Under *Strickland*, the standard has been to be judged by totality of the representation. Isolated events in the record reflecting errors of commission or omission do not cause counsel to become ineffective. Nor can ineffective assistance of counsel be established by isolating or separating out one portion of trial counsel's performance for examination.

■ The burden is on the appellant to show that the omission or other mistake made by trial counsel amounted to professional errors of such great magnitude that they were sufficient to raise a reasonable probability that the outcome of the trial would have been different but for the errors. This test is to be applied at the time of trial and not through hindsight.

■ An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment in a criminal proceeding, if the error had no effect on the judgment. Any deficiency in the criminal defense counsel's performance *must be prejudicial to the defense* in order to constitute ineffective assistance of counsel.

### Application of the Standard to the Facts

Under the standards stated, the appellant has the burden to show that the trial counsel's performance was (1) deficient, and (2) that the deficiency of performance in fact prejudiced the defense to such a degree that a fair trial could not have been had. And, indeed, but for the deficient performance the results would probably have been different.

■ The appellant has alleged several allegations in his brief. However, the appellant has failed to demonstrate that trial counsel's performance was deficient and appellant has also failed to demonstrate that any specific deficiency prejudiced the defense and affected the outcome of the case. We find that the overall performance of the trial counsel was reasonably effective.

The appellant alleged in his brief that appellant's trial counsel fell below the standard when he tendered into evidence the defendant's exhibits one, two, three and four. A careful review of these exhibits showed certain discrepancies in the eyewitness' statements and the evidence of the witness at trial. These exhibits were not patently harmful but actually aided in the defense. Exhibit number one is Officer Goldberg's statement in which he said that the defendant just sat there and didn't even look up at him. This statement supports the position of the defense throughout the trial that the defendant did not know the victim was a police officer. Also, this same exhibit shows a list of eight witnesses at the scene, but the State did not present these witnesses at trial. This was damning material adverse to the State.

In exhibit number two, the statement of McKusker recites that when the off-duty police officer approached the appellant, the officer shined a light on him. However, in defense exhibit number four, McKusker states that he had turned away and could not have seen the initial confrontation. Hence, a conflict and impeachment existed. Exhibit number three shows that the defendant pushed off the officer and did not hit him as testified by Officer Goldberg during the trial. Again, in exhibit number four, not only did it show that McKusker was looking away, but also showed that the officer was fighting with the brother of the appellant. Thus, some of the State's evidence was diminished.

The appellant claims that the State did not attempt to tender these exhibits because it knew that such exhibits were inadmissible as hearsay and would have constituted an improper attempt by the State to bolster the testimony of its witnesses in a swearing match. The appellant cites *Ex parte Welborn*[3] to support this argument. However, *Welborn* is not applicable to the case at bar.

The exhibits entered and admitted in the case at bar were contrary to and distinguishable from the exclusionary holding in *Welborn*. The admission of these exhibits did not inject any new facts harmful to the appellant, nor did they allude to any extraneous offense. It is important for us to look at the context in which these exhibits were entered. *These exhibits were admitted to show the discrepancies of the State's witnesses.* Showing discrepancies in the State's case and proffering impeachment evidence adverse to the State are hallmarks of very professional advocacy and effective, if not brilliant, "lawyering".

---

**3.** *Ex parte Welborn,* 785 S.W.2d 391 (Tex.Crim. App.1990).

Trial counsel at the very beginning of trial struck the posture of being very upfront with the jury. Beginning at voir dire, the trial counsel stated "I will come straight at you". At closing arguments the prosecutor implied that the appellant had something to hide, so the trial counsel, by showing that he had nothing to hide, introduced these exhibits. Even though the prosecutor's comments may have been objectionable, trial counsel, in keeping with his posture, decided to tender these exhibits. These exhibits, when admitted, were not harmful to the appellant. Again, we cannot say that the tendering of these exhibits was tantamount to being ineffective. We say to the contrary. That tendering was, we think, an excellent, dramatic trial tactic.

The appellate lawyer for the defense complains about the definition recited by the trial counsel on "reasonable doubt". This explanation or meaning of "reasonable doubt" occurred during voir dire. Trial counsel, we think, did not give a definition. Rather, trial counsel gave an explanation or a meaning to the phrase "beyond a reasonable doubt". In fact, trial counsel clearly announced that his explanation was not a definition. But the explanation of "reasonable doubt" was more favorable to the defendant than the concept of "reasonable doubt" as announced in *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991).

We observe that trial counsel's explanation of "reasonable doubt" and the definition of "reasonable doubt" given in the trial court's charge are harmonious and consistent, one with the other. And, they adhere to the opinion and decisions in *Geesa, supra.*

The definition of "reasonable doubt" had never been fully and authoritatively defined in Texas either statutorily or in the charge to the jury until recent time. It was not until 1991 that the Texas Court of Criminal Appeals finally decided to formulate a definition for "reasonable doubt". *See especially id.* at 161–162 nn. 10–12. The Court defined this term as "a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case. It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs." We have carefully read and proof-read the definition of "reasonable doubt" in the trial court's charge in the case at bar and the definition and instructions given in *Geesa.* The trial court's charge and instruction on "reasonable doubt" is the paramount, crucial factor. The court's charge overrides and replaces an informal explanation given at voir dire. In view of the trial court's charge and instruction on "reasonable doubt", we conclude that trial counsel was competent and informed. He was certainly not ineffective or incompetent. He simply could not object to or change the writings of the Court of Criminal Appeals in *Geesa.*

It must be noted that trial counsel all during trial showed an understanding of the law as well as of the trial tactics and strategies. Counsel showed ability to grasp the issues and to limit the focus of what would be attacked in the State's case in order to put forth the most effective defense from the start and throughout trial. Trial counsel focused on one point, being that the appellant did not know that the victim was a peace officer. The record shows clearly and explicitly that the defense counsel continuously conducted a vigorous cross-examination of all the State's witnesses, always trying to point out the major issue that the appellant did not know that the victim was a peace officer.

The appellant also claimed on appeal that the trial counsel did not know the law regarding the accused's right to testify. The record clearly shows that once the prosecutor objected, trial counsel corrected himself and placed the ultimate decision to testify or not upon the appellant. No error is shown. No ineffectiveness is shown.

Another contention appellant complains of on appeal is that the appellant mistakenly pleaded true to enhancement paragraphs set forth in the indictment. The trial court carefully explained the enhancement paragraphs to the defendant. The trial court carefully instructed the appellant as to the sequelae of the pleas of true or untrue.

The appellant, with admirable candor, pleaded true, stating in substance that he was not going to be "like those people and lie". No error is shown. No ineffectiveness is shown. Again, the trial court carefully explained the enhancement paragraphs to the appellant and asked if the enhancement paragraphs were true. The appellant unequivocally answered: "Yes, sir."

The appellant next complains that the trial counsel did not have a grasp or understanding of the range of punishment. However, the record clearly shows that the part of the trial complained of may have been recorded in an erroneous or incomplete way. It appears that the court reporter could not clearly understand the recitation by defense counsel at the time. Again, this record on this narrow point does not show ineffective assistance of counsel.

But very importantly, the trial court explained the range of punishment to the appellant. TEX.PENAL CODE ANN. art. 12.42 (Vernon Supp.1993). From the judgment and sentence, the record is clear that the defendant received thirty-five years. This sentence was nearer to the minimum punishment; the State wanted much more. The accused has shown no harm. No ineffectiveness is demonstrated.

After a friendly, amicable, understanding dialogue between the trial court and the defendant and after the sentence of 35 years confinement was pronounced, the accused said in substance he had no problem and said: "Have a nice evening, Your Honor". On balance and on the entirety of the defendant's criminal record, we perceive the trial judge was empathetic and understanding towards the appellant.

The judgment and sentence below are affirmed.

AFFIRMED.