IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-92-133-CR




JEFFREY LAYNE BARRETT,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE


 




NO. 3-92-134-CR




ZONKER DOUGLAS, A/K/A WAYNE DOUGLAS DUNCAN,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE


 




FROM THE DISTRICT COURT OF CALDWELL COUNTY, 22ND JUDICIAL DISTRICT



NOS. 91-032 & 91-033, HONORABLE FRED A. MOORE, JUDGE PRESIDING



 





 In a joint trial, a jury found appellants guilty of the offense of arson. See Tex.
Penal Code Ann. § 28.02 (West Supp. 1993). Punishments were assessed by the court at eight
years' confinement for Barrett and at five years' confinement for Douglas. In single points of
error, appellants challenge the sufficiency of the evidence to support the convictions. We will
overrule appellants' points of error and affirm the judgments of the trial court.

 Appellants had been living in and conducting a lawn care business out of a mobile
home which was destroyed by fire on August 4, 1989. Robert Lee, a professional fire fighter,
testified that his "outfit" responded to a call at 2:30 a.m. on the date in question to find a mobile
home on Caldwell County Road 191 "fully involved" in fire. Upon arrival at the scene, Lee
observed sparks coming from an electric line leading to the house. Lee saw two people standing
in the street, but was unable to identify them. Lee stated an electrical short "could cause a fire."

 Ed Stamnitz, an investigator with the State Fire Marshall's office, testified that his
investigation revealed a "pour pattern" burn on the floor of the mobile home that was not natural
to a regular fire. Stamnitz collected two debris samples, one of which was determined to contain
a medium range petroleum distillate substance such as a "lighting fluid product." Stamnitz
concluded that the fire was deliberately set and the source of the accelerant was found in debris
samples examined in the D.P.S. crime lab in Austin. Douglas testified that there were two coal
oil lamps used in the mobile home; however, Stamnitz stated that he was unable to find any
evidence of coal oil lamps nor was he able to find any coal oil in the samples. Stamnitz related
that his investigation excluded any accidental causes.

 It is undisputed that there is no direct evidence which places appellants at the fire
scene immediately prior to, during, or immediately after the fire. Appellants testified that they
were on a camping trip north of Dallas at Lake Lavon and East Fork Camp on the night of the
fire. A "user permit" shown to be issued by the Army Corps of Engineers reflects that a camping
permit was issued to Douglas for the East Fork area of the Lavon project on August 2, 1989, with
a stated departure date of August 7, 1989. Appellants testified that they were at Delana Teems'
house in the White Rock area of Dallas earlier that evening. Teems, however, did not testify. 
The State offered evidence that it would have been possible for appellants to leave Teems' home
at the stated time and reach the mobile home before the fire began.

 Applicable to the instant cause, a person commits the offense of arson if he starts
a fire with intent to destroy or damage a habitation, knowing that said habitation is insured against
damage or destruction. See Tex. Penal Code Ann. § 28.02(a)(2)(B) (West Supp. 1993). Barrett
and his parents owned the mobile home. Barrett had purchased the lawn care business from
Douglas in 1988 and owed Douglas "approximately" fifteen thousand dollars of the purchase price
at the time of the fire. In addition, Barrett owed Douglas five to ten thousand dollars for personal
property, including five thousand dollars for an antique organ alleged to have been purchased
from Douglas in 1988. Barrett received two checks from the insurance company, one for six
thousand dollars and one for twenty-five dollars. Douglas made no claim against the insurance
company.

 The convictions in the instant causes are dependent on circumstantial evidence. 
Recognizing that jurors are no longer instructed on the law of circumstantial evidence, and that
direct and circumstantial evidence are equally probative, the Court of Criminal Appeals in Geesa
v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991), rejected the former analysis for sufficiency
of the evidence that circumstantial evidence must exclude every other reasonable hypothesis other
than guilt. The Geesa court found that an appellate review which focused on the outstanding
reasonable hypothesis analysis "effectively repudiates the jury's prerogative to weigh the evidence,
to judge the credibility of the witness, and to choose between conflicting theories of the case. 
When understood from this perspective, the construct effectively places the reviewing court in the
place of a 'thirteenth juror.'" Id. at 159. Since the instant cause was tried in January 1992, a date
following the effective date of Geesa, our review of the sufficiency of the evidence does not
include a determination of whether there is an outstanding reasonable hypothesis inconsistent with
guilt. We note that the trial court gave the definitional instruction on reasonable doubt that was
formulated by the Geesa court. See id. at 162-63.

 In reviewing the evidence as an appellate court, we must determine whether,
viewing the evidence in the light most favorable to the conviction, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia,
443 U.S. 307, 319 (1979); Butler v. State, 769 S.W.2d 234, 239 (Tex. Crim. App. 1989),
overruled by Geesa v. State, 820 S.W.2d 154, 161 (Tex. Crim. App. 1991) (overruled to extent
that opinion conflicted with Geesa by using analytical construct of excluding every reasonable
hypothesis). The Court of Criminal Appeals in Moreno v. State, 755 S.W.2d 866, 867 (Tex.
Crim. App. 1988), amplified on the correct way to apply the Jackson standard:



The court is never to make its own myopic determination of guilt from reading the
cold record. It is not the reviewing court's duty to disregard, realign or weigh
evidence. This the factfinder has already done. The factfinder, best positioned to
consider all the evidence first-hand, viewing the valuable and significant demeanor
and expression of the witnesses, has reached a verdict beyond a reasonable doubt. 
Such a verdict must stand unless it is found to be irrational or unsupported . . . by
. . . the evidence, with such evidence being viewed under the Jackson light. 
Concrete application of the Jackson standard is made by resolving inconsistencies
in the testimony in favor of the verdict.



Since the exclusion of the reasonable hypothesis analysis in circumstantial evidence cases, the
Jackson standard is applicable in determining the legal sufficiency of the evidence in all criminal
cases.

 Appellant contends that the evidence has been held insufficient to support the
conviction where the accused is not placed at or near the scene of the fire. See Baugh v. State,
776 S.W.2d 583 (Tex. Crim. App. 1989); O'Keefe v. State, 687 S.W.2d 345 (Tex. Crim. App.
1985). In Baugh, the evidence showed that the defendant had removed some of his furniture to
be refinished. Prior to the fire, the defendant was asleep in a trailer house approximately one-half
of a mile from the house. The defendant explained that he frequently slept in the trailer house
because it was air conditioned and the structure that burned was not. The evidence regarding the
incendiary nature of the fire was highly controverted, both the State and the defendant having
offered the testimony of expert witnesses. The defendant explained that he had used gasoline in
refinishing the furniture, and that it was stored on the front porch. The defendant had made no
threat to start a fire nor had there been any suspicious circumstances such as showing an increase
in insurance coverage. The Baugh court held that the State did not negate every reasonable
hypothesis as to the cause of the fire, stating that the evidence circumstantially supported the
inference that the fire started as the result of an accident rather than arson. Baugh, 776 S.W.2d
at 586.

 In O'Keefe, the defendants were observed departing the scene of the fire at a "slow
rate of speed" a short time before the fire started. Only one of the defendants made a claim on
insurance. The defendants, father and son, were at a car-wash when they were notified of the
fire. Several witnesses testified that the defendants' reaction was one of shock and disbelief and
that they immediately returned to the scene of the fire. Both sides presented expert testimony that
was in direct conflict as to whether the fire had been intentionally set. The O'Keefe court
concluded that there were at least two other reasonable hypothesis besides arson, and that there
was no evidence connecting the defendants with the fire. O'Keefe, 687 S.W.2d at 349-50.

 In noting that Baugh and O'Keefe predated Geesa, we are not passing on whether
Geesa lessened the standard by which an appellate court reviews the sufficiency of the evidence
to sustain a conviction. However, our review of the sufficiency of the evidence in a post-Geesa
circumstantial evidence cause does not include a determination of the existence of an outstanding
reasonable hypothesis inconsistent with guilt.

 While none of the following circumstances, standing alone, meet the State's burden
of proof in the instant cause, we find the cumulative effect of all the incriminating evidence
sufficient to sustain the jury's findings of guilt under the Jackson and Moreno standard. A
number of factors distinguish the instant cause from Baugh and O'Keefe. Appellants had made
it known that they were in dire need of money, and the lawn care business was insolvent and no
longer in operation. Tracey Krause, a former employee, testified that Douglas stated in July 1989
that, "he might as well burn it and take the money and go." Krause related that the business was
in bad financial condition before she was fired. While it was shown that Krause was not on
friendly terms with appellants, the jury, as the fact finder, was in a position to determine the
weight to be given her testimony. Both appellants stood to improve their financial condition as
the result of the fire. While Douglas made no claim against the insurance company, his chance
of collecting any portion of the money Barrett owed him would be greatly enhanced by Barrett's
collection of insurance following a fire. Eight months prior to the fire, Barrett increased
insurance coverage on the personal property in the mobile home from six thousand dollars to
eleven thousand dollars. The State's expert testimony about the incendiary origin of the fire and
the deliberate setting of the fire was not controverted. While fireman Lee testified that a fire
could be started by an electrical short, he voiced no opinion about the cause of the instant fire. 
Both appellants were shown to have had experience with insurance claims and Douglas had some
knowledge of fire investigations from having been a volunteer fireman.

 Appellants removed a number of personal property items from the mobile home
prior to the fire. A television, a V.C.R., and some clothes were taken on the camping trip. Two
dogs were removed to a barn behind the mobile home. Other items of personal property were
taken from the mobile home and placed in the barn, including a trunk owned by Douglas that
contained his personal property. During the investigation of the fire a television was found on
top of the trunk with no dust or debris on it. Appellants related that items were placed in the barn
because it was a safer location. However, Barrett claimed that he had left nine hundred dollars
in an antique organ in the mobile home. No evidence of the existence of an antique organ was
found by investigators following the fire.

 Appellants were notified of the fire the following morning between nine and ten
o'clock. Unlike the defendants in O'Keefe who returned home immediately after learning of the
fire, the appellants remained at the camp ground the remainder of the day and did not start their
return trip home until the next morning. Barrett testified that four people could place appellants
in Dallas "at about 10:00 p.m." the night preceding the fire; however, no witnesses testified at
trial to confirm the alibi. The State offered evidence that if appellants were in Dallas or at the
camp site at the stated time, they could have driven home before the fire started. Both appellants
failed to cooperate with the fire investigator. Barrett initially told the investigator that the
business had not experienced financial difficulties and gave conflicting reports about what he owed
Douglas. The only items related to the investigator as having been removed from the house were
the television and the V.C.R. until the investigator started his investigation at the barn. Terry
DePhillips, a representative of the insurance company, identified a claim filed by Barrett for the
sum of $11,950 in which Barrett listed, among other items lost in the fire, an antique organ valued
at five thousand dollars, nine hundred dollars in cash, a 12 x 12 oriental rug, a 4 x 6 oriental rug,
and 250 record albums valued at $1,500. Barrett did not fill out the portion of the claim form
listing the "month and year of purchase, store and city, things like that."

 Viewing the cumulative effect of all the incriminating circumstances, we conclude
that any rational trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. Appellants' points of error are overruled.

 The judgments are affirmed.



 

 Tom G. Davis, Justice

Before Justices Powers, Aboussie and Davis*

Affirmed on Both Causes

Filed: December 22, 1993

Do Not Publish



















* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).